■ NEW YORK TELEPHONE COMPANY et al., Respondents v. NEW YORK CITY TRANSPORTATION ADMINISTRATION et al., Appellants. CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Respondent, v. NEW YORK CITY TRANSPORTATION ADMINISTRATION et al., Appellants. BROOKLYN UNION GAS COMPANY, Respondent, v. NEW YORK CITY TRANSPORTATION ADMINISTRATION et al., Appellants.— Orders, Supreme Court, New York County, each entered November 16, 1973, granting plaintiffs, utility companies, a preliminary injunction, unanimously affirmed, without costs and without disbursements, on condition that plaintiffs-respondents proceed to trial no later than the June, 1974 Term. Defendants-appellants upon a showing that plaintiffs have failed to proceed expeditiously, may apply to Special Term to be relieved of the injunction

(*National Distillers & Chem. Corp.* v. *Macy & Co.*, 23 A D 2d 51). The appli-
cation of appellants on argument to make the April, 1973 report of the New
York State Department of Environmental Conservation entitled "New York
City Metropolitan Area Air Quality Implementation Plan Transportation Con-
trols" part of the record on appeal is denied. Such report is not a matter for
appropriate judicial notice and was not part of the record below. Concur —
Markewich, J. P., Murphy, Lupiano and Tilzer, JJ.; Kupferman, J., concurs
in the following memorandum: I concur in the affirmance of the granting of
the motion of the plaintiffs for a preliminary injunction solely on the basis
of the balance of convenience at this time in view of the court's direction for
an early trial. However, so that the granting of the injunction should not be
misinterpreted, elucidation of the situation seems warranted. At long last,*
in the Fall of 1972, the New York City Council passed and the Mayor signed
the New York City Noise Control Code (Administrative Code of City of New
York, § 1403.3–1.01 et seq.). It prohibits, among other things, street construc-
tion on weekends and between the hours of 6:00 P.M. and 7:00 A.M. on week
days. A variance can be granted in an emergency situation for public safety
by the city Department of Highways and the city Transportation Administra-
tion. On or about June 7, 1973, the city Department of Highways amended
its rules and regulations to prohibit street openings on certain arterial streets
in the city, mainly in Manhattan, on week days between the hours of 7:00 A.M.
and 7:00 P.M. "except for inspection or emergency work." (Department of
Highways Rules and Regulations, § 3.01, subd. [b].) Less than 100 miles
out of some 6,000 miles of city streets are covered by this amended rule.
It is clear that both of these prohibitions are valid when not in combina-
tion. However, the effect of both limitations is to exclude the utilities, who are
the plaintiffs, from these well-traveled streets for the purpose of routine main-
tenance and new construction, except on weekends by day or by special per-
mission. The plaintiffs point out that not only is their performance in the
regular course of business (Transportation Corporations Law, §§ 11, 27) made
more difficult or impossible, but also their compliance with requirements of
State law for utilities. (Public Service Law, §§ 65, 91, subd. 1.) Their attack
is mainly on the amended highway regulations. They are not generally desir-
ous of having night time work due to union problems and overtime pay, mug-
gings, not finding near-by customers open, etc. The Department of Highways'
amended regulations have their source in the Federal Clean Air Act (U. S.
Code, tit. 42, § 1857) in order to prevent traffic congestion which results in
increased levels of air pollution. The April, 1973 report of the New York
State Department of Environmental Conservation entitled "New York City
Metropolitan Area Air Quality Implementation Plan Transportation Controls" is
an in depth study of the problem and the Federal requirements for compliance
by localities. On notice, it was offered at the oral argument in this court, and
was objected to as not having been part of the record before the court at
Special Term, although it was referred to in the city's brief below. While it
should have been accepted by this court, because it is available in libraries
with respect to environmental problems, and we could take judicial notice
thereof (CPLR 4511; *Matter of Consolidated Edison Co. of N. Y.* v. *Lindsay*,
30 A D 2d 392, 394, revd. on other grounds 24 N Y 2d 309), that ruling is not
significant, because on the trial it will be available. The court should not
close its eyes to official studies on the environment. Further, it cannot be gain-
said that traffic is considerably impeded by street openings, many of them
haphazard and without co-ordination among the utilities involved, assuming,

---

* See A Summing Up on Noise (114 Cong. Rec. 16413, 16417).

of course, the need for an expeditious handling of such street openings. Consolidated Edison, one of the plaintiffs in these three cases, states that in the specific restricted streets alone, it has obtained 6,600 street opening permits in the last five years, an average of 1,320 per year. The city's right to regulate traffic on its highways cannot be disputed. (*Cities Service Oil Co.* v. *City of New York*, 5 N Y 2d 110.) Obviously, the legislative and executive branches have an obligation to help prevent air pollution and noise pollution and yet also to allow the utilities promptly to perform their duties. Where there is a possible conflict in the achievement of these ends, the court should not intervene unless the resolution of the conflict is arbitrary and unreasonable. (*Oriental Blvd. Co.* v. *Heller*, 27 N Y 2d 212.) It cannot really be said at this time that the approach by the City of New York has been unreasonable. Emergency is clearly and undisputably provided for. Weekends by day are not restricted. In addition, there is provision for further exceptions. Although yet to be demonstrated, it may be that the utilities involved will have additional expenses, but this is part of the social cost of having a more livable environment. (Predicting the Future by Raymond A. Bauer in Transportation Noises edited by James D. Chalupnick [Univ. of Washington Press, 1970], p. 247.) "A man out of a job is not really concerned about the possibility of getting lung cancer in ten years". (See Town Meeting on the Environment in the Regional Plan Association's How to Save Urban America by William A Caldwell [1973], p. 109.) The choice here, however, is not that disparate. The danger inherent in having uninspected utility facilities, such as gas lines, is readily apparent, and the problem requires careful consideration, but in proper perspective.