Wachtler, J.
The National Organization for Women (NOW) has instituted this action pursuant to section 296 (subd. 1, par. [d]) of the Executive Law against the Gannett Publishing. Company, Inc. (Gannett), a newspaper publisher. Specifically, NOW charges that to maintain separate columns[1] in newspaper classified advertising for male employment and female employment is violative of subdivision 6 of section 296 of the Executive Law which reads: “ It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this .article, or to attempt to do so.”
The matter was initially brought before a field representative of the State Division of Human Eights who determined that the *419 practice of maintaining the separate “ Male ” and “ Female ” help wanted columns was discriminatory. This conclusion was overruled by the Division itself where the complaint was dismissed. The dismissal was upheld by the State Human Rights Appeal Board. NOW and the Association of Personnel Agencies of New York, Inc. sought review of the Division’s determination in the Appellate Division, which unanimously confirmed the determination of the Division. The appeal is before this court by our permission.
At the time of the State Division of Human Rights determination its policy with respect to separate listings was that the captions “ Help Wanted — Male ” and “ Help Wanted — Female ” were not discriminatory but merely for the convenience of the readers. Subsequent to its determination in this matter, it has changed that policy with regard to separate listings and Gannett no longer employs the questioned labeling of its want ads. It is urged, for this reason, that the matter is moot and that the appeal should therefore be dismissed.
This we decline to do because of the policy of our court to rule on issues of great public significance which are likely to recur, particularly when it involves broad statutory interpretations[2] (see, e.g., Le Drugstore Etats Unis v. New York State Bd. of Pharmacy, 33 N Y 2d 298, 301; Blye v. Globe-Wernicke Realty Co., 33 N Y 2d 15, 19; Matter of Concord Realty Co. v. City of New York, 30 N Y 2d 308).
In addition to the mootness issue, it is urged by the respondent that NOW does not have the requisite standing to bring suit because it is not “ Any person claiming to be aggrieved by an unlawful discriminatory practice ”. (Executive Law, § 297.) We disagree. It is our view that NOW has the requisite standing to bring this action (see Matter of Glen Cove Municipal Civ. Serv. Comm. v. Glen Cove NAACP, 34 A D 2d 956).
NOW is a bona fide and nationally recognized organization dedicated to eliminating discriminatory practices against *420 women. It is clearly not what the United States Supreme Court referred to as a mere “ concerned bystander ” (United States v. SCRAP, 412 U. S. 669, 687). Nor is it relevant that a named plaintiff was not directly refused employment based on sex as a result of the separate listings (see Hailes v. United Air Lines, 464 F. 2d 1006, 1008). When legislation proscribes conduct against a class, the complaining party need not allege and specify injured parties (Pittsburgh Press Co. v. Human Relations Comm., 4 Pa. Commonwealth Ct. 448, affd. 413 U. S. 376). The complainant, as here, may be a bona fide recognized organization representing that class with a specific interest in the litigation in question (see Matter of American Jewish Congress v. Carter, 19 Misc 2d 205, affd. 10 A D 2d 833, affd. 9 N Y 2d 223; Matter of Glen Cove Civ. Serv. Comm. v. Glen Cove NAACP, supra).[3]
The first substantive issue that arises in this case is whether there has been an unlawful discrimination committed. An analysis of this issue must start with the recognition that unlawful discrimination against women is widespread and cannot be tolerated (accord Frontiero v. Richardson, 411 U. S. 677, 686). It must also be recognized that illegal discrimination will not be announced in public but will usually be effected by “ subtle ” and “ elusive ” means (Matter of Holland v. Edwards, 307 N. Y. 38, 45).
In the Pittsburgh Press case {supra, p. 461) the newspaper under attack asserted that the separate listings were “ oriented to the interests of persons seeking employment ”. In the case at bar, respondent also seeks to cloak a discrimination in the guise of an alleged service to the readers. In fact, the very disclaimer3 [4] then mandated by the Human Rights Division stated *421 that the separate listings were used for the “ convenience of the readers
It may well be that more women are interested in secretarial jobs than are men. Or that more men are interested in accounting jobs than are women. However, it is often the case that a person or organization acting in a manner which genuinely intends to be descriptive becomes in effect prescriptive. A policy purporting to reflect a statistical phenomenon actually becomes a self-fulfilling prophecy which helps to generate the very presumptive foundation for its existence. The separate listings in issue here are a case in point. The discrimination against women permeates the salary structure with the result that jobs listed in the “ female ” column are much lower paying than those listed in the “ male ” column (see, e.g., Pittsburgh Press Co. v. Human Relations Comm., 413 U. S. 376, 393, supra).[5] Such sex discrimination, of course, is prohibited by section 296 of the Executive Law and those who aid or abet such unlawful discrimination are also chargeable with an unlawful discriminatory practice (Executive Law, § 296, subd. 6). In the case at bar, it is clear that Gannett may not be held culpable for directly perpetuating discrimination due to sex solely because of the manner in which it labels its want ads. Also, it is not an “ employer ” nor is it an “ employment agency ” as those terms are used and defined in section 292 of the Executive Law (cf. Brush v. San Francisco Newspaper Print. Co., 315 F. Supp. 577, 580). However, since it published its want ads under separate sex designations, we hold that it aided and abetted sex discrimination, and such aiding and abetting is condemned by subdivision 6 of section 296 of the Executive Law.
In reaching the above conclusion we need not treat the issue as to whether a newspaper has the obligation of determining whether a sex designation set forth internally within an advertisement represents a bona fide occupational qualification within the meaning of section 296 (subd. 1, par. [d]) of the Executive Law.
We hold only that to designate separate want ad column listings as “ Help Wanted — Male ” and/or “ Help Wanted — *422 Female ” reinforces the very discriminatory practices which the Federal and State antidiscrimination laws were meant to-eliminate (cf. Passaic Daily News v. Blair, 63 N. J. 474).
The order appealed from should be reversed, without costs, and the matter remitted to the Appellate Division with directions to remand the same to the State Division of Human Rights.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Stevens and Rabin concur.
Order reversed, without costs, and matter remitted to the Appellate Division for further proceedings in accordance with the opinion herein.

. Among other headings, the columns in the classified section of the newspaper bear the following designations: “Help Wanted — Female ”, “Help Wanted'—Male”.

. In addition, because of the Appellate Division decision, other jurisdictions as well as groups and individuals within the State may interpret New York State policy as allowing the separate column listings. (See, e.g., Passaic Daily News v. Blair, 63 N. J. 474.) This would be anathema to the strong antidiscrimination policy of this State as spelled out in the Human Rights Law. It would also allow the very discrimination perpetrated here to recur.

. There is even more reason to grant standing where, as here, rather than involving only one specific place or instance (see Sierra Club v. Morton, 405 U. S. 727), the alleged wrongdoing has a wide impact (see United States v. SCRAP, 412 U. S. 669, 687, supra).

. The disclaimer that the Human Rights Division required newspapers having separate column listings to utilize, stated: “ The New York State law on Human Rights and the Federal Civil Rights Act of 1964 prohibit discrimination in employment because of age or sex unless based on a bona fide occupational qualification. Help Wanted and Situations Wanted advertisements are arranged in columns captioned ‘ Male ’ and ‘ Female ’ for the convenience of readers and are not intended as an unlawful limitation or discrimination based on sex.”

. In the Pittsburgh Press ease the average salary when listed in the “ male ” column was $13,200, while the average salary in the “ female ” column was $6,500,