Leon E. Wein, Respondent-Appellant, v City of New York et al., Appellants-Respondents.

First Department, April 17, 1975

*Leon E. Wein (William J. Quirk* with him on the brief), respondent-appellant, *pro se.*

*W. Bernard Richland, Corporation Counsel (James G. Greilsheimer, Leonard Bernikow* and *Kenneth F. Hartman* with him on the brief), for appellants-respondents.

*White & Case (Orison S. Marden, Willis McDonald IV, Marion Jay Epley, III, Robert L. Clair, III* and *Cleary Gottlieb Steen & Hamilton* by *Evan A. Davis,* of counsel), attorneys for Financial Community Liaison Group, *amicus curiae.*

LUPIANO, J. This is an action brought by a taxpayer pursuant to section 51 of the General Municipal Law for declaratory and injunctive relief. Special Term (KORN, J.) granted defendants' motion for accelerated judgment and declared that although plaintiff had standing to maintain this action, the underlying legislation under attack in the complaint is constitutional and the proposed bond issue valid.

The New York City Stabilization Reserve Corporation Act (Public Authorities Law, § 2530 *et seq.)* establishes an independent public benefit corporation to succor the City of New York in a time of unprecedented fiscal crisis. The Legislature found

and declared that the creation of such corporation is necessary to assist the city to enable it to provide essential services during the 1973–75 fiscal years on a sound financial basis (Public Authorities Law, § 2533). Upon appropriate certification by the Mayor of the need for funds to provide essential services, the Stabilization Reserve Corporation is authorized to issue and sell bonds and notes having an aggregate amount not exceeding five hundred twenty million dollars. Proceeds of the sale would be paid to the Comptroller with repayment generated from the corporation's revenue. These revenues include the establishment of a capital reserve fund into which the city is to deposit on or before the first day of December, in each year, "such amount, if any, needed for the purpose of maintaining the capital reserve fund at the capital reserve fund requirement as shall be certified by the chairman of the corporation to the mayor and the director of the budget on or before the fifteenth day of February next preceding; provided that any such amount shall have been first appropriated by or on behalf of the city for such purpose or shall have been otherwise made available" (Public Authorities Law, § 2537). It is also provided that "the notes, bonds or other obligations of the corporation shall not be a debt of either the state or the city, and neither the state nor the city shall be liable thereon, nor shall they be payable out of any funds other than those of the corporation; and such notes and bonds shall contain on the face thereof a statement to such effect" (Public Authorities Law, § 2542).

It is alleged in the complaint that plaintiff is a city real property taxpayer assessed in excess of $1,000 and is thus entitled pursuant to section 51 of the General Municipal Law to bring this action. The Stabilization Reserve Corporation Act is attacked as being violative of certain provisions of the New York State Constitution, to wit, that the debt proposed to be incurred by the corporation constitutes debts of the City of New York in excess of its constitutional debt limit (NY Const., art. VIII); a violation of the proscription in section 2 of article VIII, against the city contracting indebtedness without pledging its faith and credit for repayment; and a violation of section 1 of article VIII, prohibiting the city from giving or loaning its credit in aid of any public or private corporation. Before service of an answer, defendants moved for judgment dismissing the complaint on the grounds that plaintiff has not legal capacity to sue (CPLR 3211, subd [a], par 3) and that the

complaint fails to state a cause of action (CPLR 3211, subd [a], par 7). In this context, the threshold issue is whether plaintiff has standing.

Section 51 of the General Municipal Law authorizes actions against public officials "to prevent any illegal official act * * * or to prevent waste or injury to, or to restore and make good, any property, funds or estate [of the City]". The action may be maintained by a person whose real property assessment amounts to $1,000 or more and who is liable to pay the taxes on such assessment. In *Rogers v Board of Supervisors* (77 App Div 501, 502) which concerned a taxpayer's action, it was aptly observed that the plaintiff therein had "all of the rights which any other citizen has whose property is *about to be taken* without due process of law. In such an action as the present one the plaintiff is not bound to show that he will suffer peculiar injury; he is appearing in behalf of himself and all other taxpayers, and *it is enough for him to show that he has the status as a taxpayer which the statute prescribes* and that the act of the defendant is one which the law forbids" (emphasis supplied). The criteria of taxpayer status and allegation of illegal official acts which will produce public inquiry were again enunciated in *Bloom v Mayor of City of N. Y.* (35 AD2d 92, affd 28 NY2d 952), as satisfying the statutory requirements of section 51 of the General Municipal Law. The Appellate Division unequivocally stated (p 95) that "the plaintiffs, though not required to show a direct injury to themselves *(Rogers v Board of Supervisors of Westchester County [supra])*, allege illegal official acts which will produce public injury (cf. *Di Paola v City of Glen Cove,* 21 AD2d 678). Indeed, a taxpayers' action has been said to be the proper vehicle to test the legality of local proceedings claimed to infringe the constitutional debt limit or the statutory machinery for the issuance of bonds". The Court of Appeals patently approved of this observation when it declared (p 953) that "the opinion at the Appellate Division adequately and incisively treats of the issues involved".

It is well recognized that with respect to declaratory judgment, the party who seeks same must have a "standing to sue". In determining whether there is such standing, it must be shown that the plaintiff's personal or property rights will be directly and specifically affected. "Thus, a private citizen who does not show any special rights or interests in the matter in controversy, other than those common to all taxpay-

ers and citizens, has no standing to sue" (24 Carmody-Wait 2d, New York Practice, § 147:28). However, a taxpayers' action for declaratory judgment is governed by section 51 of the General Municipal Law and is a separate and distinct remedy. "Under the statutes, it is the status of the plaintiff as a taxpayer, not a special injury to the particular plaintiff, that gives him the right to sue as a taxpayer" (21 Carmody-Wait 2d, New York Practice, § 128:1; see Carmody-Wait 2d, § 128:38). On this basis it is held that plaintiff has standing to bring this action against the city and its officials. No question is raised concerning the maintenance of a taxpayers' action against a State body.

As to the merits, the statutory provisions of the Stabilization Reserve Corporation Act are self-evident. It is plaintiff's conclusory assertions that such provisions are unconstitutional which give the complaint surface appeal insofar as the issue of whether the complaint states a cause of action is concerned. In the context of CPLR 3211 (subd [c]), although the motion to dismiss pursuant to CPLR 3211 (subd [a], par 7) may not be considered as one for summary judgment because of the absence of notice, the present record containing evidence that could be considered on a motion for summary judgment, warrants concluding that plaintiff has failed to state a cause of action. Initially, it is noted that the act clearly provides that the corporation's notes shall not be city debt (Public Authorities Law, § 2543). The official statement and notice of sale for the notes provides: "The Corporation has no taxing power. Neither the City nor the State is liable on the Notes or bonds, and the Notes and bonds are not a debt of the City or the State". Not being obligations of the city, the bonds and notes do not transgress article VIII of the State Constitution. Examination of other pertinent provisions of the Stabilization Reserve Corporation Act discloses that the Stabilization Reserve Corporation is authorized to pledge its revenues to the payment of its notes and bonds. The revenues of the corporation which come from the city are payments by the city to the Capital Reserve Fund of the corporation pursuant to section 2537 (subd 1, par [c]) of the Public Authorities Law and payment for the expense of the establishment and continued operation of the corporation pursuant to section 2540 of the Public Authorities Law. However, the city is *not required* to make such payments unless they are appropriated. In the event of failure by the city to pay over to the corporation the

amount required to replenish the Capital Reserve Fund, it is provided that the State Comptroller shall pay such deficiency from (a) moneys appropriated to the stock transfer tax fund for payment to the city, or (b) if such fund is insufficient to pay such amount, unallocated per capita State aid apportioned to the city subsequent to payments from such aid to certain other public benefit corporations. (Public Authorities Law, § 2540, subds [b], [c]). Upon failure by the city to pay as delineated above, the moneys contingently payable to the corporation are State moneys, although the State itself does not have to appropriate such moneys.

In *Comereski v City of Elmira* (308 NY 248), the Court of Appeals was concerned with the validity of a contract between the City of Elmira and the Elmira Parking Authority pursuant to which in each year the authority would give notice to the city of the amount of the estimated deficit, if any, in the funds of the authority available for the payment of its bonds, and the city would pay the amount thereof to the authority from the city's net revenues from its parking meters only, and in no event would more than $25,000 be paid in any calendar year. In upholding the validity of this contract against the assertion that it transgressed section 1 of article VIII of the State Constitution, the court declared (in connection with a statutory provision in the Elmira Parking Authority Act [Public Authorities Law, § 1493] similar to the provisions of section 2542 of the Public Authorities Law at issue herein): "Frequently, those statements, that municipalities are not liable on the authority's bonds and that the bonds are payable out of the authority's funds only, are coupled with authorization or mandates of various kinds of direct assistance to authorities from those same municipalities. Apparently, the Legislature did not see, nor do we, any inconsistency between the two kinds of statutory pronouncements. Provisions such as those in section 1493 mean just what they say: the authority's bonds are to be a debt of the authority only, payable out of its funds only. They do not forbid the transfer of money or property by State or city to an authority. Indeed, the numerous statutes cited * * * show that a city's nonliability on an authority's bonds and the same city's right or duty to assist the authority financially are part of the same conventional statutory pattern. We should not strain ourselves to find illegality in such programs. The problems of a modern city can never be solved unless arrangements like these (used in

other States, too, see *State ex rel Bibb v Chambers,* 138 W Va 701) are upheld, unless they are patently illegal. Surely such devices, no longer novel, are not more suspect now than they were twenty years ago when, in *Robertson v Zimmerman* (268 NY 52, 62) we rejected a charge that this was a mere evasion of the constitutional debt limitations, etc." *(Comereski v City of Elmira, supra,* pp 253–254.) Accordingly, it is concluded that the Stabilization Reserve Corporation Act does not violate section 1 of article VIII of the State Constitution. Since the obligations delineated under the act are not legal obligations of the city, they are not chargeable against the debt limits provided for in the State Constitution (see 1975 Opns Atty Gen, dated March 13). Further, it is clear that section 5 of article X of the State Constitution is not violated. That section bars liability on the State or any political subdivision thereof for the payment of any obligations issued by a public corporation (other than a county, city, etc.) and states that the Legislature may not "accept, authorize acceptance of or impose such liability upon the state or any political subdivision thereof; but the state or a political subdivision thereof may, if authorized by the legislature, acquire the properties of any such corporation and pay the indebtedness thereof". To reiterate, the Legislature in enacting the Stabilization Reserve Corporation Act has expressly provided that the State and the city are not liable on the bonds and notes of the corporation.

The touchstone in resolving the dilemma faced by the city in this time of crisis and, indeed, in analyzing the abstruse concepts advanced against the constitutionality of the Stabilization Reserve Corporation Act is that of fiscal responsibility. To requite the public interest which so clearly inheres in this virtue and which transcends the niceties and technicalities of "legal" as compared to "moral" obligations, there must be an avowed willingness in all sections of the body politic to confront the financial problems of the city in nonpiecemeal fashion and to implement programs reasonably calculated to achieve fiscal health. This should be the desired purpose.

The judgment of the Supreme Court, New York County (KORN, J.), entered March 17, 1975, granting defendants' motion for accelerated judgment should be affirmed, on the law, without costs and disbursements.

KUPFERMAN, J. (dissenting in part and concurring in part).

I concur in the determination that the plaintiff has standing to raise the question with which we are concerned. (See

*Matter of Whalen v Lefkowitz,* 36 NY2d 75, 78; *Matter of Abrams v Ronan,* 44 AD2d 535, 536 [dissent], affd on other grounds 36 NY2d 714.)

As to the merits, despite a valiant argument by the Corporation Counsel of the City of New York to the contrary, the Stabilization Reserve Corporation appears to be an attempt to evade, not merely to avoid, the New York State Constitution strictures against incurring excessive debt. A cause of action is stated and should be tried.

The case of *Comereski v City of Elmira* (308 NY 248) is easily distinguished. The parking meter authority there had an ostensible purpose and was not merely a conduit for circumvention.

STEVENS, P. J. and MARKEWICH, J. (dissenting in part). In the main, we concur in the opinion of our brother LUPIANO wherein he finds the legislation under attack to be constitutional, and we would affirm to that extent. We part company with him, however, on the question of plaintiff-appellant's standing to bring the action. On the record before us, we are not persuaded that at this juncture he is placed sufficiently, or even at all, at risk so as to justify capacity to sue. The possibility of injury to him is so remote and speculative that we believe that the judgment below should be reversed on that score alone, and the complaint dismissed.

Moreover, the right recognized or conferred by section 51 of the General Municipal Law to maintain an action, so far as here pertinent, exists to prevent any illegal official act, or to prevent waste or injury to or make good any property, funds or estate of the city. Obviously, at this stage there is no illegality since the Legislature has authorized the proposed action. The notes to be issued are not debts of the city. Thus, there is presently no waste of the resources of the city and none is envisioned under the statute.

NUNEZ, J., concurs with LUPIANO, J.; STEVENS, P. J., and MARKEWICH, J., dissent in part in an opinion and hold that plaintiff does not have standing to maintain action; KUPFERMAN, J., dissents in an opinion so far as defendants' motion for accelerated judgment was granted, and would try issue of constitutionality.

Judgment, Supreme Court, New York County, entered on

March 17, 1975, affirmed, without costs and without disbursements.