In the Matter of ROBERT ABRAMS, Individually and as Borough President of the Bronx and Member of the Board of Estimate, et al., Appellants, v NEW YORK CITY TRANSIT AUTHORITY et al., Respondents.

First Department, May 15, 1975

*Marcia J. Cleveland* of counsel (*David Schoenbrod, Lesley Bader, Barbara Jenkins, Jon Mirowitz* and *Marcia Tompkins* with her on the brief), for appellants.

*James P. McMahon* of counsel *(Helen R. Cassidy* with him on the brief; *John G. de Roos* and *Robert R. Prince,* attorneys), for respondents.

LUPIANO, J. As aptly observed by Special Term (78 Misc 2d 938, 939–940, MARKOWITZ, J.): "The stated purpose of this article 78 proceeding is to compel respondents to comply with the laws controlling noise in the New York City subways. Toward that end, petitioners, as individuals and in various official and representative capacities seek an order directing the New York City Transportation Authority and the Metropolitan Transportation Authority, and their members 'to turn over immediately to petitioner, Robert Abrams' the reports required by certain sections of the Public Authorities Law, and setting down the petition for hearing * * * The goal to abate subway noise levels is, beyond cavil, meritorious. In the efforts to reach this objective, all those who ride the subways, and respondents, the State and City officials in charge, and the court, no doubt readily join petitioners." The threshold issue is whether petitioners have "a standing to sue". It is settled law that a petitioner making a general attack on legislative or administrative action or inaction must demonstrate special damages distinct from that suffered by the public at large *(Hidley v Rockefeller,* 28 NY2d 439; *Posner v Rockefeller,* 26 NY2d 970). Thus, in determining whether there is "a standing to sue", it must be shown that petitioners' personal or property rights will be directly and specifically affected. "A private citizen who does not show any special rights or interests in the matter in controversy, other than those common to all taxpayers and citizens, has no standing to sue" (24 Carmody-Wait 2d New York Practice, § 147:28). The petitioners who represent the parents association contend that they have standing to sue because their school's location in proximity to a subway allegedly affords the requisite special and adverse interest. Special Term correctly declared (p. 941) that "the very length of the subway system and its proximity to many structures in many places renders this argument not compelling. The class to which all petitioners belong is so broad as to encompass virtually all residents of the City. As such, they have no standing to sue, absent a showing, that some act is being done by respondents, or is threatened and imminent, which could cause material special injury to them. Petitioners have made no such showing".

*Wein v City of New York* (47 AD2d 367) cited in the dissent,

does not mandate a different result. In that case, we noted that a taxpayer's action for declaratory judgment brought pursuant to section 51 of the General Municipal Law is a separate and distinct statutory remedy from declaratory judgment actions in general. Section 51 of the General Municipal Law *not* involved herein, authorizes actions against public officials "to prevent any illegal official act * * * or to prevent waste or injury to, or to restore and make good, any property, funds or estate [of the city]". Under such statute, "it is the status of the plaintiff as a taxpayer, not a special injury to the particular plaintiff, that gives him the right to sue as a taxpayer" (21 Carmody-Wait 2d, New York Practice, § 128:1; see 21 Carmody-Wait 2d, § 128:38).

Analysis of recent cases discloses a liberalized attitude towards standing, but with continued observation of the requisite showing of personal or property rights that will be directly and specifically affected. Thus, in *Matter of Whalen v Lefkowitz* (36 NY2d 75), a tenant of an apartment subject to rent control sought to annul the conversion of that part of the Parkchester Housing complex wherein his apartment was situated, to condominium status. The Court of Appeals stated (pp 77-78): "according a condominium status to the quadrant reduces the number and importance of rental tenants, thus diluting their negotiating power as a group and in turn diminishing the strength and significance of each individual tenant, alters profusely the number of fee titleholders of the common interest in the common elements and results in the inevitable disruption that must of necessity follow such an extensive change of operation. Consonant with liberalized attitudes towards standing (see *Matter of Douglaston Civic Assn. v Galvin,* 36 NY2d 1; *National Organization for Women v State Div. of Human Rights,* 34 NY2d 416), *petitioner's interest* in the reorganization of the complex in which he resides, therefore, *is not abstract but personal, real, direct and substantial,* conferring standing to challenge the public official's action *(Matter of Taylor v Sise,* 33 NY2d 357, 362; *Schieffelin v Komfort,* 212 NY 520, 530; *Butler v Kent,* 19 Johns. 223, 226)" (emphasis supplied). Patently, in *Matter of Whalen v Lefkowitz,* the petitioner's interest afforded a basis for showing threatened special damages distinct from that suffered by the public at large. This conclusion is buttressed by scrutiny of *Matter of Douglaston Civic Assn. v Galvin* (36

NY2d 1) and *National Organization for Women v State Div. of Human Rights* (34 NY2d 416) relied on in *Matter of Whalen v Lefkowitz (supra).*

*Matter of Douglaston Civic Assn. v Galvin (supra)* involved the issue of whether a civic or property owners' association has standing pursuant to section 668e-1.0 of the New York City Administrative Code to contest the grant of a variance. Recognizing that a restrictive view of standing under that statute would preclude the association because it had no *direct* property interest in the zoned land, the Court of Appeals opined that there was a "particular need in zoning cases for a broader rule of standing" *(Matter of Douglaston Civic Assn. v Galvin, supra,* p 6). Thus, a specific broader rule of standing "entirely consistent with the underlying purposes of our zoning laws" (p 7) was enunciated as follows (pp 6–7): "It should be readily apparent that a person desiring relaxation of zoning restrictions—such as a change from residential to business—has little to lose and much to gain if he can prevail. He is not reluctant to spend money in retaining special counsel and real estate appraisers if it will bring him the desired result. The individual owner of developed land in the neighborhood, on the other hand, may not, at the time, realize the impact the proposed change of zoning will have on his property, or, realizing the effect, may not have the financial resources to effectively oppose the proposed change. Thus, the neighboring property owners rarely fight as hard for zoning protection as the developer or speculator does for relaxation of zoning restrictions. Against this background of economic disparity, an individual property owner, who stands only to gain (or prevent the loss of) the maintenance of the *status quo* as regards the value of his homestead and his peace and quiet, cannot be expected, nor should he be required, to assume by himself the burden and expense of challenging the zoning change. Even if successful, the *aggrieved individual* will not be able to recoup his expenditures. By granting neighborhood and civic associations standing in such situations, the expense can be spread out over a number of property owners, putting them on an economic parity with the developer." (Emphasis supplied.) Based on the economic realities inherent in an adversative context under the statute (section 668e-1.0 of the Administrative Code which provides that "any person or persons, jointly or severally aggrieved by any decision of the board" may challenge that decision in an article 78 proceeding

in the nature of certiorari), the Court of Appeals in effect pierced the veil of the civic association and viewed the admittedly aggrieved individual's status and special interest as affording to the association the requisite "standing to sue". Similarly, in *National Organization for Women v State Div. of Human Rights* (34 NY2d 416), the National Organization for Women was held to have standing pursuant to section 297 of the Executive Law which grants to "any person claiming to be aggrieved by an unlawful discriminatory practice" the right to proceed against such practice. Again, in an adversative context, the Court of Appeals recognized on a pragmatic basis that the petitioner, a nationally recognized organization dedicated to eradicating discrimination against women, was more than a mere concerned bystander or undifferentiated member of the public *(National Organization for Women v State Div. of Human Rights, supra,* pp 419–420).

Comparison of *Matter of Whalen v Lefkowitz* (36 NY2d 75, *supra); Matter of Douglaston Civic Assn. v Galvin* (36 NY2d 1, *supra);* and *National Organization of Women v State Div. of Human Rights (supra)* with the instant matter impels the conclusion that petitioners herein may not be viewed as having "standing to sue". There is no underlying adversative situation presented which requires liberalizing the concept of standing to equalize the litigants for pragmatic or economic reasons, there is no particular statutory predicate claimed by the petitioners as generating the requisite standing and there is no clear line of demarcation setting petitioners aside as a class distinct from the public at large which, coupled with some credible showing of special damages, would justify the conclusion that they have standing. Of course, if petitioners presented some cogent argument which factually might afford a basis for standing, although it could not at this juncture be determined as a matter of law, then a hearing would be mandated. Indeed, this appears to be the rationale underlying the dissents both in the Appellate Division and Court of Appeals insofar as standing is concerned in *Matter of Abrams v Ronan* (44 AD2d 535, 536, affd 36 NY2d 714) cited in the dissent herein.

With respect to petitioner Abrams' claim that he is entitled under section 1213 of the Public Authorities Law to a copy of the report required of the City Transit Authority pursuant to section 2500 of the Public Authorities Law concerning that respondent's operations and financial status, Special Term

again correctly observed (p 941): "concededly he has received as Borough President a copy of all reports under the Public Authorities Law supplied the Board of Estimate." He has not otherwise established any right to a directive that he be furnished additional detailed reports. Finally, it appears that the Metropolitan Transportation Authority (MTA) is not a proper party to this proceeding as it is an independent public authority without responsibility for excessive subway noises. This province is that of respondent New York City Transit Authority.

Petitioners' motion for an order striking certain enumerated portions of respondents' brief on their appeal on the grounds that said portions include "extra-record, erroneous assertions" is denied as untimely and improper. It is noted that the matter sought to be deleted from respondents' brief was not persuasive in the disposition of the instant appeal in any manner whatsoever.

Accordingly, the judgment of the Supreme Court, New York County (MARKOWITZ, J.), entered December 13, 1974, dismissing the petition should be affirmed, without costs and disbursements.

KUPFERMAN, J. (dissenting). This is an article 78 proceeding to compel respondents to abate unnecessary subway noise and, among other things, avoid violation of the city's Noise Control Code (Administrative Code of City of New York, § 1403.3-1.01 *et seq.*).

The interest of the city and its inhabitants in a decent environment cannot be gainsaid. (See concurring opinion in *New York Tel. Co. v New York City Tr. Administration,* 44 AD2d 784, 785.) Nonetheless, the petition was dismissed for lack of standing. We most recently sustained standing in *Wein v City of New York* (47 AD2d 367), and the Court of Appeals in *Matter of Whalen v Lefkowitz* (36 NY2d 75) and *National Organization for Women v State Div. of Human Rights* (34 NY2d 416) permitted proceedings where the petitioners as here had a direct interest in the claim presented.

In a prior matter involving the same lead petitioner, I maintained in dissent that standing had been established. (See *Matter of Abrams v Ronan,* 44 AD2d 535, 536.) The Court of Appeals there affirmed on other grounds without mention of the question of standing, although COOKE, J. (with FUCHSBERG,

J. concurring) stated as follows: "I concur in the result, solely on the ground that appellant as the Borough President is not aggrieved and therefore did not have standing. Had appellant proceeded as an individual, which he stated he did not, I would have arrived at a different conclusion in regard to dismissal at this juncture." (36 NY2d 714, 715, 716.)

The petitioner this time proceeds individually as well as in his official capacity and is joined with others in the petition, such as the Natural Resources Defense Council, Inc. Therefore, it would seem that the question of standing has not been foreclosed, and I would remand for consideration of the petition on the merits.

STEVENS, P. J., MARKEWICH and CAPOZZOLI, JJ., concur with LUPIANO, J.; KUPFERMAN, J., dissents in an opinion.

Judgment, Supreme Court, New York County, entered on December 13, 1974, affirmed, without costs and without disbursements.