Simons, J.
(dissenting). The majority holds today that a professional society has standing to maintain a court challenge to administrative rulings which may or may not affect its members. It has not said so expressly. It rests its decision upon a determination that providers of Medicaid services have standing to maintain this action and that some of the providers are probably members of petitioner society. That is where the rabbit comes out of the hat. The petition does not contain allegations from which it may be determined that the providers have standing nor does it allege that any of the providers are members of plaintiff organization. The majority assume that to be so by empirical intuition because 5% of the dentists in New York State are providers and 87% of the dentists in the State are members of petitioner. Thus, it holds, some aggrieved providers must be members of petitioner. There is nothing before us to support these assumptions. By inferring standing on this record the majority has removed any limits to the concepts of zone of interest and injury in fact and has approved this court rendering, in effect, an advisory opinion on the law. I therefore dissent and vote to reverse the order of the Appellate Division and dismiss the petition.
Petitioner’s claim of standing rests upon the allegations that it is the only State-wide professional association for all licensed dentists, that 87% of them are members, that the society fairly represents the dental profession as a whole and that the Medicaid reimbursement schedule “directly” affects its members. It is then alleged in the petition that “[sjince the Society’s members very closely correspond to the entire class of potentially aggrieved parties” the society has standing to maintain this suit.
Two observations should be made. First, there is nothing in the petition or in the record to establish that providers of dental services have standing to challenge the Medicaid reimbursement rates paid to them (cf. Singleton v Wulff, 428 US 106, 109, 112-113). Second, even if the providers could establish standing to maintain this litigation there is nothing in the petition or record to support the claim that petitioner may represent them in doing so. One might as well maintain that grocers have an abstract right of standing to challenge the rate of assistance payments made to *337 public aid recipients, or, to draw the analogy finer, that the Better Business Bureau has the right to do so on the grocers’ behalf on the assumption that some of the grocers selling to public assistance recipients must be members of the Better Business Bureau. Even the liberal standing requirements of our past decisions do not permit petitioner to maintain the proceeding under such circumstances.
Under New York law a petitioner, if it is to establish standing, must allege that the challenged administrative action will have a harmful effect on it and that the interest asserted is arguably within the zone of interest to be protected by the relevant statute or regulation in question (Matter of Bradford Cent. School Dist. v Ambach, 56 NY2d 158, 164; see, also, Matter of City of New York v City Civ. Serv. Comm., 60 NY2d 436; Matter of Dairylea Coop. v Walkley, 38 NY2d 6). Additionally, the court is required to examine the relevant statutes and precedents to ascertain the presence or absence of a legislative intent to preclude review of the claim (Matter of Bradford Cent. School Dist. v Ambach, supra, at p 164). This formulation of our standing rule is directly traceable to the Federal rule set forth in Data Processing Serv. v Camp (397 US 150, 153). In Data Processing, petitioner providers of data processing services to businesses generally, sought to challenge a ruling of the Comptroller of the Currency permitting national banks, such as respondent bank, as an incident to their banking services, to make data processing services available to other banks and bank customers. The court granted petitioners standing to maintain the action because they had alleged injury in fact and they were within the protected zone of interest. It found that the bank’s competition in the data processing field caused competitive injury, thereby establishing a “case or controversy” under article III of the United States Constitution, and that the interest sought to be protected by petitioners was arguably within the zone of interests to be protected or regulated by the relevant statute. Additionally, the court found no intent on the part of Congress to preclude review of the Comptroller’s rulings. Former Chief Judge Breitel identified the many substantial reasons against applying the Data Processing standard in his dissenting opinion in Matter of Dairylea Coop. v *338 Walkley (supra, at pp 12-13). Nevertheless it has become embedded in our case law and it is too late in the day to change it. Before further liberalizing the rule, however, it is worth noting that the court which originated the zone of interest concept has moved away from it and now relies on a different, more stringent, stándard and references to the zone of interest test are conspicuously absent from its recent decisions (see, e.g., Duke Power Co. v Carolina Environmental Study Group, 438 US 59, 72; and see 94 Harv L Rev 489, 525-526, n 221). Supreme Court decisions now require a plaintiff to allege: (1) the requisite threatened or actual injury (Linda R. S. v Richard D., 410 US 614, 617); (2) a “fairly traceable” causal connection between the claimed injury and the challenged conduct (Duke Power Co. v Carolina Environmental Study Group, 438 US 59, 72, supra); and (3) the likelihood that the injury would “be redressed by a favorable decision” (Simon v Eastern Ky. Welfare Rights Organization, 426 US 26, 38). Thus the court that originally sponsored the zone of interest concept is refining its rule for standing and imposing additional requirements to insure concrete adverseness in the litigation and to regulate the volume of cases before the court.
The majority has also relied on the fact that petitioner is a professional society, citing Matter of Douglaston Civic Assn. v Galvin (36 NY2d 1) and National Organization for Women v State Div. of Human Rights (34 NY2d 416). As it concedes, however, the fact that petitioner is an organization adds nothing to its claim of standing. It must allege that its members, or any one of them, are suffering immediate or threatened harm as a result of the challenged action (Hunt v Washington Apple Adv. Comm., 432 US 333; Warth v Seldin, 422 US 490, 511). Moreover, both cited decisions are distinguishable from this case. In Douglaston we held that petitioner, a civic association of over 1,000 owners and residents, had standing to challenge the grant of a zoning variance which affected the immediate vicinity of members’ residences. We did so, however, without relating petitioners’ interests to a relevant statute, holding that the impact of the variance was within the zone of interest to be protected. Earlier we held that the National Organization for Women had standing to challenge the lawfulness *339 under the Human Rights Law of separate “Male” and “Female” help wanted columns in newspaper classified advertising because it was a recognized organization with a specific interest in the litigation, even though it was conceded that none of the named plaintiffs were refused employment based on sex as a result of the separate listings (National Organization for Women v State Div. of Human Rights, 34 NY2d 416, supra).
The result in Douglaston was appropriate because the harm to the individual members of the association who owned land affected by the grant of the variance was apparent and real. Thus it was irrelevant that the association owned none; it had standing as the alter ego of the individual members. The record in this case does not establish that providers of medical services are members of plaintiff; nonproviders are, but they are not directly affected by the existing Medicaid reimbursement rates and petitioner’s contention that an increase in the rate would induce nonproviders to provide services relies upon speculative possibilities of future aggrievement, not present injury. The NOW case is also distinguishable. In NOW plaintiff based its complaint upon the antidiscriminatory provisions of the Human Rights Law which were specifically enacted to benefit and protect women as a class. The reimbursement statute petitioners challenge does not benefit dentists as a class and it certainly does not benefit dentists who do not provide Medicaid services. The statute was intended to benefit the dentists’ patients, those who cannot afford ordinary dental care.
Petitioner has either failed or is unable to plead facts establishing its standing to sue. The allegations in its petition must state a basis for standing factually and specifically, not in a conclusory or speculative manner (see Roberts, Fact Pleading, Notice Pleading, and Standing, 65 Cornell L Rev 390, 415; see, also, Warth v Seldin, 422 US 490, supra; Albany Welfare Rights Organization Day Care Center v Schreck, 463 F2d 620, cert den 410 US 944). Standing is a threshold jurisdictional issue in every action and proceeding and it should appear clearly from the pleadings. An allegation that society members are “potentially aggrieved” is patently insufficient to. meet any rea *340 sonable standard of specificity (see Arlington Hgts. v Metropolitan Housing Corp., 429 US 252). An allegation of harm to Medicaid recipients is similarly unavailing because a party cannot obtain standing on a jus tertii basis (see Gladstone Realtors v Village of Bellwood, 441 US 91, 100). Petitioner has failed to assert any basis to support its claim that it has standing.
This State’s standing requirements, which were never very stringent, are now almost undefined. Where once we held that under our rule standing would be denied only if there was a clear legislative intent to negate review or want of injury in fact to the plaintiff (see Matter of Dairylea Coop. v Walkley, 38 NY2d 6,11, supra), now in the absence of legislative preclusion, standing will be found if any superficial connection can be found between the subject matter in the suit and the petitioner. Injury in fact need not be shown and the limits of the zone of interest concept, which were always unclear, are now amorphous.
The requirement of standing is not a technicality to be palmed off as a minor defect in pleading, easily ignored because it is subject to correction by repleading. Allegations to support standing may be supplied on repleading or they may not. Nothing in this record establishes that this plaintiff can meet the established tests to maintain this litigation and it should be required to prove that it can. Only aggrieved parties should be permitted to sue and unless the plaintiff is aggrieved the court lacks jurisdiction of the cause of action (see Siegel, NY Prac, § 136). The recognition of standing on the pleadings of this case provides a sweeping precedent for the maintenance of litigation by any organization, including the thousands of ad hoc groups formed in response to the aggravation of the moment, if only it can prove that the statute or regulation under attack does not preclude its suit. If this petitioner can challenge the Medicaid reimbursement rates, anyone can.
Chief Judge Cooke and Judges Jasen, Jones, Wachtler and Meyer concur with Judge Kaye; Judge Simons dissents and votes to reverse in a separate opinion.
Order affirmed, etc.