Andrew J. RODOLICO, on behalf of himself and all others similarly situated, Howard K. Benjamin, on behalf of himself and all others similarly situated, Robert G. Bozzone, on behalf of himself and all others similarly situated, Marvin Stall, on behalf of himself and all others similarly situated, Melvyn Rubenstein, on behalf of himself and all others similarly situated, Robert E. Wechsler, on behalf of himself and all others similarly situated, Plaintiffs,

v.

UNISYS CORPORATION, Defendant.

No. CV 95–3653(ADS).

United States District Court,
E.D. New York.

Aug. 25, 1999.

Vladeck, Waldman, Elias & Engelhard, P.C., New York City, by Julian R. Birnbaum and James Wasserman, of counsel, for the plaintiffs.

Epstein Becker & Green, P.C., New York City, by Dean L. Silverberg, Matthew T. Miklave, Michael A. Kalish and A. Jonathan Trafimow, of counsel, for the defendant.

### MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The motions presently before the Court present a novel issue in this Circuit. Namely, whether an employer being sued for age discrimination, based partly upon the terms of a Collective Bargaining Agreement and a Performance Planning and Evaluation Program, may seek contribution from the union that was a party to those labor agreements. For the reasons stated in this decision, the Court is of the view that the New York Human Rights Law provides a basis for such contribution.

## I. BACKGROUND

Unless otherwise stated, the following facts are not in dispute. On September 6, 1995, this action was commenced by six class representatives on behalf of the putative

plaintiffs (the "plaintiffs"), for the alleged violations of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* (the "ADEA"), and the New York State Human Rights Law, N.Y.Exec.Law § 290, *et seq.* (the "NYHRL").

On November 23, 1993, the Unisys Corporation (the "defendant" or "Unisys") laid off 232 engineers in its Great Neck, New York headquarters. The plaintiffs, all members of Engineers Union Local 444 (the "Union" or "Local 444") allege that Unisys' policies and practices in the reduction in force ("RIF") discriminated against its older employees. The plaintiffs' allegations can be summarized as follows:

The layoff discriminated against older employees by disproportionately selecting them for discharge, by discriminatorily implementing a provision in a collective bargaining agreement giving Unisys discretion in selecting employees for lay off, and by using evaluation practices which, as described below, disfavored older workers.

Plaintiffs' Complaint at ¶ 2.

The employees laid off in connection with the RIF were professional engineers whose collective bargaining representative was Local 444. The engineers were organized by Local 444 in 1969 and thereafter entered into a series of collective bargaining agreements with Unisys covering the periods 1970–73, 1973–76, 1976–79, 1979–82, 1982–85, 1985–88, 1988–91, and 1991–95. As stated, the 1991 Collective Bargaining Agreement ("CBA") was effective through 1995. The CBA contained a seniority provision requiring Unisys to create a seniority list, known as the "Main List" or the "A List." The Great Neck engineers were included on the "A list" and were subdivided into three seniority tiers. The "junior tier" was comprised of engineers with a seniority date on or after January 1, 1983. The "middle tier" was comprised of engineers with a seniority date on or after January 1, 1977 and before January 1, 1983. Finally, the "senior tier" was comprised of engineers with a seniority date prior to January 1, 1977.

Under the negotiated layoff provision, Article 11, any "A List" layoffs were to be implemented by order of seniority. There were, however, two exceptions to seniority lay-offs. Pursuant to the CBA, two classes of engineers were "protected" from layoff: (1) engineers identified by the Union to be Union officials and/or stewards; and (2) engineers identified by Unisys to be retained. With respect to the latter group, Local 444 agreed that Unisys could retain: (1) three engineers for every engineer to be laid off from the "junior tier" on the "A List;" (2) two engineers for every engineer to be laid off from the "middle tier" of the "A List;" and (3) one engineer for every engineer to be laid off from the "senior tier" of the "A List."

In 1988, Unisys introduced a formal appraisal process, referred to as the Performance Planning and Evaluation program ("PP & E"). The PP & E consisted of three stages. The first stage required an employee to meet with his or her supervisor at the beginning of the year and agree to objectives to be accomplished by the end of the year. The second stage required a meeting in the middle of the year between the employee and supervisor to discuss the employee's performance during the first half of the year. Finally, stage three required that the supervisor complete a performance appraisal assigning the employee a numerical rating based upon the employee's performance during the year. When Unisys implemented the PP & E policy in 1988, it applied only to non-bargaining unit employees. However, in 1989, Unisys applied the PP & E to bargaining unit employees.

Local 444 initially challenged the PP & E by filing an unfair labor practice charge with the National Labor Relations Board ("NLRB"). However, they settled the charge with Unisys in 1990. As part of the settlement, Unisys and Local 444 agreed that supervisors would independently determine employee objectives at stage 1, meet with employees to provide the objectives at stage 2, and determine the applicable performance ratings at stage 3.

As previously stated, in November 1993, Unisys laid off 232 engineers it its Long Island operation, headquartered at Great Neck, New York. The putative plaintiffs, all members of Local 444, allege that Unisys'

policies and practices in connection with the RIF discriminated against older employees in violation of the ADEA and the NYHRL. Presently before the Court are four motions: First, Unisys requests leave to file a third-party complaint against Local 444 pursuant to Rule 14 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."); Second, Unisys moves to join Local 444 as a necessary party pursuant to Fed.R.Civ.P. 19; Third, Unisys moves to disqualify plaintiffs' counsel, Vladeck, Waldman, Elias & Engelhard, P.C. (the "Vladeck Firm"); and Fourth, the plaintiffs move to certify a class pursuant to Fed. R.Civ.P. 23 with regard to the NYHRL claim, and to maintain their ADEA claims as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b). The Court will review and determine each of these motions in turn.

## II. DISCUSSION

A. *Request by Unisys for Leave to File a Third–Party Complaint Against Local 444*

■ Fed.R.Civ.P. 14(a) states, in pertinent part, that:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer. Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action.

Rule 14(a) was designed "to promote judicial economy by eliminating the need for a defendant to bring a separate action against a third-party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's claim." *Hines v. Citibank, N.A.,* 96 CV 2565(RJW), 1999 WL 440616, *2 (S.D.N.Y. June 28, 1999) (citing *Gross v. Hanover Ins. Co.,* 138 F.R.D. 53, 54 [S.D.N.Y.1991]) (other citations omitted).

"Timely motions for leave to implead non-parties should be freely granted to promote [judicial] efficiency unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an obviously unmeritorious claim." *Fashion–In–Prints, Inc. v. Salon, Marrow & Dyckman, L.L.P.,* 97 CIV 340(DC), 1999 WL 500149, *6 (S.D.N.Y. July 15, 1999) (quoting *Shafarman v. Ryder Truck Rental, Inc.,* 100 F.R.D. 454, 459 [S.D.N.Y.1984] ).

■ "Factors relevant to the determination of whether to permit the filing of a third-party complaint include: (1) whether the movant deliberately delayed or was derelict in filing the motion; (2) whether impleading would delay or unduly complicate the trial; (3) whether impleading would prejudice the third-party defendant; and (4) whether the proposed third-party complaint states a claim upon which relief can be granted." *Fashion–In–Prints, Inc.,* 1999 WL 500149, *6 (quotation omitted). In *Kenneth Leventhal & Co. v. Joyner Wholesale Co.,* 736 F.2d 29, 31 (2d Cir.1984), the Second Circuit explained that when determining whether impleading a third party is appropriate, the third-party defendant's liability to the third-party plaintiff must be "dependent upon the outcome of the main claim" or the third-party defendant must be "potentially secondarily liable **as a contributor** to the defendant." *Id.* (emphasis added) (citation omitted).

■ Finally, "[a]lthough Rule 14(a)'s purpose is to promote judicial economy, ... the right to implead third parties is not automatic, and the decision whether to permit impleader rests within the sound discretion of the district court." *Consolidated Rail Corp. v. Metz,* 115 F.R.D. 216, 218 (S.D.N.Y.1987) (citation omitted).

It is within this framework that the Court addresses the grounds for the request by Unisys for leave to file a third-party complaint against Local 444.

■ Unisys seeks to file a third-party complaint against Local 444 for contribution under New York State Law. *See* N.Y.CPLR 1401 (McKinney 1997). In support of its motion, Unisys contends that to the extent

Local 444 breached its duty to fairly represent its union members by participating and ratifying the CBA and the PP & E, Local 444 is jointly liable for any finding of discrimination. Unisys states that:

> [t]o the extent that Unisys may ultimately be held liable to putative plaintiffs either because at least some claim [that] Article 11 [of the CBA] is discriminatory or that the performance appraisal process was not age neutral (as alleged by plaintiff's expert), Unisys may hold the Union accountable for its proportionate share of any liability under the NYHRL.

(Defendant's Memorandum of Law Requesting Leave to File a Third–Party Complaint Against the Union, at 8). In support of their argument, Unisys contends that class representative Marvin Stall claimed in a deposition that Article 11 evidenced Unisys' discriminatory animus against older employees. Thus, Unisys argues that because the Union vigorously participated in the negotiations that led to the passage and implementation of Article 11 of the CBA, it is jointly and severally liable for damages to the extent that it breached its duty of fair representation.

Similarly, but in connection with the PP & E, Unisys highlights the testimony of the plaintiff's expert, Dr. David Crawford, as establishing a basis for the Union's joint and several liability. Unisys submits that the Union played "an aggressive and active role in the administration of the PP & E" and that Dr. Crawford's report concludes that "discrimination in the administration of the performance appraisals lies at the root of the November 1993 RIF." Therefore, to the extent the Union violated its duty to fairly represent its members in connection with the PP & E, it is jointly and severally liable under a theory of contribution.

The plaintiffs assert that the motion seeking leave to file a third-party complaint should be denied for the following reasons: (1) governing law does not recognize a right to contribution; (2) the defendant's claims against the Union are without merit; and (3) the request by the defendant is untimely.

### 1. Does the Governing Law Permit Contribution Under the NYHRL?

The issue of whether contribution is permitted under the provisions of the NYHRL is unresolved in this Circuit. In *Northwest Airlines, Inc. v. Transport Workers Union of America, AFL–CIO*, 451 U.S. 77, 79, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), the Supreme Court was confronted with the issue of:

> whether an employer held liable to its female employees for back pay because collectively bargained wage differentials were found to violate the Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964 has a federal statutory or common-law right to contribution from unions that allegedly bear at least partial responsibility for the statutory violations.

*Id.* (footnotes omitted). Justice Stevens, for a unanimous Court, held that there was no right to contribution under either the Equal Pay Act or Title VII. The Supreme Court's decision was based on the non-existence of a federal common law or statutory right to contribution; the fact that neither the Equal Pay Act nor Title VII expressly creates a right to contribution; and the Court's finding that neither the Equal Pay Act nor Title VII were created for the special benefit of employers.

In its discussion of whether a federal common law or statutory right to contribution exists, the Supreme Court acknowledged, based on Lord Kenyon's decision in *Merryweather v. Nixan*, 8 Term Rep. 186, 101 E.R. 1337, 42 Digest 979 (1799) that while at common law, no right to contribution existed between joint tortfeasors, "[i]n most American jurisdictions ... that rule has been changed either by statute or by judicial decision." *Northwest Airlines*, 451 U.S. at 87–88, 101 S.Ct. 1571 (footnotes omitted). In fact, and as cited in the Supreme Court's opinion *see id.* at 87, n. 17, 101 S.Ct. 1571, New York has a contribution statute.

Section 1401 of the New York Civil Practice Law and Rules ("CPLR") ("Section 1401") states, in pertinent part, that "... two or more persons who are subject to liability for damages for the same personal injury .... may claim contribution among them whether

or not an action has been brought ... against the person for whom contribution is sought." In New York, contribution is not limited to cases in which the liability is based on negligence. Tortfeasors who are liable under theories of strict liability, breach of warranty, and even intentional torts may seek contribution. *See Doundoulakis v. Town of Hempstead,* 42 N.Y.2d 440, 451, 398 N.Y.S.2d 401, 406, 368 N.E.2d 24, 29 (1977); *Taft v. Shaffer Trucking, Inc.,* 52 A.D.2d 255, 259, 383 N.Y.S.2d 744, 747 (4th Dep't 1976); *Hughes v. Ataka America, Inc.,* 48 A.D.2d 808, 369 N.Y.S.2d 723 (1st Dep't 1975).

In *Donajkowski v. Alpena Power Co.,* 460 Mich. 243, 596 N.W.2d 574, 575–76 (1999), the Michigan Supreme Court was confronted with the issue of "whether an employer being sued for sex discrimination based upon the terms of a collective bargaining agreement may seek contribution from a union that was a party to that labor agreement." Finding the *Northwest Airlines* decision inapplicable due to an express statutory provision in Michigan, similar to the one in New York, permitting a right to contribution among joint tortfeasors, the Michigan Supreme Court concluded that the employer had a right to seek contribution from the union. The Court stated that:

> While we often examine federal law in construing our Civil Rights Act, Michigan law is not analogous to federal law on this point. Under federal law, there is no statutory right to contribution, whereas in Michigan there is. Under these circumstances, *Northwest Airlines* is wholly inapplicable.

460 Mich. 243, 596 N.W.2d at 579 (footnote omitted).

Like the Supreme Court of Michigan in *Donajkowski,* this Court is of the view that section 1401 mandates a finding that Unisys has a right to seek contribution under the terms of the NYHRL against Local 444 for its alleged participation, negotiation, ratification, and administration of the CBA and the PP & E. A violation of the NYHRL essentially involves actions akin to tortious conduct. The New York Legislature has provided, in unambiguous language, that a tortfeasor, whether it be for intentional, negligent, or reckless behavior, is liable to his fellow tortfeasor for contribution. Thus, where a union is alleged to have participated in the underlying acts that are the root of the discrimination claim, the NYHRL in conjunction with section 1401, affords the named defendant employer the right to seek contribution from the union. *See generally Dole v. Dow Chemical Co.,* 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288 (1972).

In addition to the express statutory authority under CPLR. 1401, the Court notes that the NYHRL, unlike the Equal Pay Act, Title VII and the ADEA, contains an "aiding and abetting" component. *See* N.Y.Exec. Law § 296(6) (McKinney 1998) ("[i]t shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article.") While New York courts "have consistently looked to federal case law in expounding the Human Rights Law," *Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1180 (2d Cir.1992), where the statutory language differs between the NYHRL and the applicable federal civil rights statute, courts have differentiated between the two causes of action. *See e.g., Houston v. Fidelity,* 95 CIV 7764 RWS, 1997 WL 97838, at * 8 (S.D.N.Y. Mar. 6, 1997) (noting that the NYHRL provides for aiding and abetting liability while the ADEA does not).

In *National Organization for Women v. State Div. of Human Rights,* 34 N.Y.2d 416, 421, 358 N.Y.S.2d 124, 128, 314 N.E.2d 867 (1974), the New York Court of Appeals recognized that under the NYHRL aiding and abetting provision, it is not necessary that the discriminator be an employer or have an employment relationship with the party discriminated against. Instead, the Court held that a party can be found liable if the conduct "reinforces the very discriminatory practices which the federal and state antidiscrimination laws were meant to eliminate." *Id.* at 422, 358 N.Y.S.2d 124, 314 N.E.2d 867, 358 N.Y.S.2d at 129, 314 N.E.2d 867. It cannot be disputed that if the Union violated its duty to fairly represent its members and aided and abetted Unisys' alleged discriminatory conduct, than the Union's behavior

would amount to conduct that reinforces the discriminatory practices which the NYHRL was designed to eliminate.

■ By way of example, in *State Div. of Human Rights v. Sweet Home Cent. Sch. Dist. Bd. of Educ.*, 73 A.D.2d 823, 423 N.Y.S.2d 748, 750 (4th Dep't.1979), the Fourth Department held that "[w]hen a union fails to exercise that power in the bargaining process and permits an employer to discriminate against union members, it has discriminated against them as surely as if it proposed the inequitable agreement and is equally liable." The Court also notes that the plaintiffs' argument that the "aiding and abetting" language of the NYHRL is not applicable to Local 444 because it is not a "person" within the meaning of section 292(1) of the NYHRL is unpersuasive. The Union is an unincorporated association, and the term "person," under the NYHRL, includes "associations." *See International Ass'n of Machinists and Aerospace Workers Local Lodge No. 967 v. General Elec. Co.*, 713 F.Supp. 547 (N.D.N.Y.1989) (holding that a Union is a "person" within the meaning of the NYHRL).

■ Finally, the Court emphasizes that sound public policy under New York law warrants the finding that a claim of contribution exists under the NYHRL where a union is alleged to have participated in the underlying conduct that is the cause of the alleged discrimination. If Local 444 breached its duty of fair representation and was intentionally involved in the procedures which Unisys used to discriminate against its employees on the basis of their age, then they are both culpable. The Court agrees with the Michigan Supreme Court's rationale in *Donajkowski, supra*, stating in response to the dissent that:

> The dissent has taken on the Leviathan burden of justifying the position that plaintiffs' union may escape liability for its alleged role in fostering employment discrimination in the workplace. Stripped to its essentials, the dissent would hold that a union may conspire to discriminate on the basis of sex, and, when called to account at the bar of justice for its role in that conspiracy, by the others charged, escape lia-

bility. Thus, the dissent would grant this union a blanket immunity from contribution that is unavailable to any other person, corporation, or entity in our state.

460 Mich. 243, 252–255, 596 N.W.2d 574, 579–580. In the Court's view, immunity from contribution, in light of section 1401 and the aiding and abetting language in the NYHRL, would not only be legally inappropriate, but would result in fostering employment discrimination in the workplace. The Union should be accountable for any role it may have had with regard to intentionally aiding in discrimination in the workplace—a result that promotes the duty of a union to fairly represent its members. Unions have a duty to act in good faith toward their members and to fight against discrimination that may occur as a result of employment decisions.

Therefore, the Court finds that under the NYHRL, a right to contribution against the Union exists.

### 2. Are the Defendant's Claims of Contribution Against Local 444 Meritless?

■ The plaintiffs' contend that even if a right to contribution exists under the NYHRL, the defendant's request to join Local 444 as a third-party defendant should be denied as it would foster an obviously unmeritorious claim.

In *Schauer v. Joyce*, 54 N.Y.2d 1, 5, 444 N.Y.S.2d 564, 565, 429 N.E.2d 83, 84 (1981), the New York Court of Appeals stated that "[t]he relevant question under CPLR 1401 [is] ... whether [the third-party defendant] and [the defendant] each owed a duty to [the plaintiff], and by breaching their respective duties contributed to her ultimate injuries...." The proposed third-party complaint states, in relevant part, that:

13. Plaintiffs make two assertions against Unisys that impact on Unisys' claims against the Union. First, at least one class representative claims that Article 11 discriminated against employees age 40 and older. Second, plaintiffs assert that the RIF reflected a departure from age neutrality. Plaintiffs' claims, therefore,

depend on evidence that the PP & E was biased against older workers.

The plaintiffs claim that the "one class representative" never made the claim that Unisys attributes to him; that the Court cannot assume that the ratings or layoff selections were based upon the PP & E's; that the plaintiffs' claims do not depend statistically on evidence of the PP & E; and that Local 444 did not breach its duty of fair representation to the putative plaintiffs.

While the possibility exists that many, if not all, of these issues will ultimately be resolved in the context of a motion to dismiss or by a motion for summary judgment by the third-party defendant, Local 444, the Court is mindful that "[t]imely motions for leave to implead non-parties should be freely granted to promote [judicial] efficiency unless to do so would prejudice the plaintiff, unduly complicate the trial, or would foster an **obviously unmeritorious claim**." *Fashion–In–Prints, Inc. v. Salon, Marrow & Dyckman, L.L.P.,* 97 CIV 340(DC), 1999 WL 500149, * 6 (S.D.N.Y. July 15, 1999) (quoting *Shafarman v. Ryder Truck Rental, Inc.,* 100 F.R.D. 454, 459 [S.D.N.Y.1984] ) (emphasis added).

While there may be issues of fact as to whether one of the putative class representatives claims that Article 11 of the CBA evidenced Unisys' discriminatory animus against older employees; whether the testimony of the plaintiffs' expert leads to a conclusion that age discrimination was a direct result of the performance appraisal process; or whether Local 444 breached its duty of fair representation, clearly the third-party complaint is not an "obviously unmeritorious claim."

In summarizing Rule 14 and the right to implead a joint tortfeasor for contribution, it has been stated that:

If the governing substantive law recognizes a right of contribution [as does New York], impleader under Rule 14 is a proper procedure by which to seek relief from joint tortfeasors. The availability of impleader enables the right of contribution to be litigated concurrently with the main claim. Because the question whether someone is a joint tortfeasor is largely one of fact to be determined by the jury, a

motion to dismiss the third-party complaint on the ground that it fails to state a claim normally should be denied and the third-party plaintiff allowed an opportunity to produce evidence as to the nature of the relationship.

6 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 1448 (2d ed.1990) (footnotes omitted). The issue presented by the putative plaintiffs in connection with Unisys' motion for leave, and in particular with regard to whether the third party claim is meritorious, will not be completely resolved by this opinion. As previously stated, however, the third-party defendant, Local 444, will ultimately have the opportunity to present any defense applicable and move to dismiss the third party complaint. Suffice it to say, however, the Court has thoroughly reviewed the voluminous record and concluded that the third party complaint is not obviously unmeritorious.

## 3. Is the Defendant's Motion Timely?

The plaintiffs submit that the defendant's motion requesting leave to file a third-party complaint is untimely. Unisys contends that the delay in its application is based on newly discovered evidence. First, Unisys claims that they did not learn that one of the class representative's view that Article 11 of the CBA evinced discriminatory animus against older workers until he was deposed; and second, that it was not until the plaintiffs' expert affidavit dated October 1, 1998, that it learned that the PP & E operated to disfavor employees age 40 or older. Moreover, Unisys correctly points out that Local 444 would not be prejudiced by any delay as they have participated in discovery; have had knowledge of the case and the plaintiffs' claims; discovery has not been completed; and a date for trial has not been set. Furthermore, it does not appear that the filing of a third-party complaint would unduly delay or complicate the trial as the claims against Local 444 would essentially involve the same set of facts and legal issues.

Accordingly, Unisys' motion seeking leave to file a third-party complaint against Local

444 is granted to the extent it seeks contribution under the provisions of the NYHRL.

### B. *Unisys' Motion to Join the Union as a Necessary Party*

■ Fed.R.Civ.P. 19(a) states, in pertinent part, that:

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been so joined, the court shall order that the person be made a party.

■ Similar to Rule 14, "[d]eterminations under Rule 19 are within the discretion of the district court...." *Adams v. Delta Air Lines, Inc.*, 96 CIV 2871(HB), 1997 WL 12803, * 1 (S.D.N.Y. Jan. 4, 1997) (citations omitted).

The basis for Unisys' motion to join Local 444 as a necessary party is based on the plaintiffs' request for injunctive relief, including reinstatement. Unisys argues that to the extent that the plaintiffs seek reinstatement, Local 444 is a necessary party in order to insure compliance with any potential order of reinstatement. In support of its argument, Unisys cites *EEOC v. Rockwell Int'l. Corp.*, 23 F.Supp.2d 892, 894 (N.D.Ill.1998) and *Adams, supra*, which permitted joinder to insure that the union complied with the order for retroactive seniority and to protect the employer from the possibility of inconsistent obligations where the plaintiffs have requested reinstatement.

On the other hand, the plaintiffs' point out that they are not seeking reinstatement into Local 444–Lockheed Martin bargaining unit,

the successor of the Local 444–Unisys, Great Neck, New York bargaining unit.

Obviously, neither Unisys nor the plaintiffs can provide retroactive seniority without Local 444's agreement or acquiescence. However, as the plaintiffs assert that they are not seeking reinstatement into the Local 444–Lockheed Martin bargaining unit, the Court is of the view that there is no possibility that a grant of retroactive seniority would conflict with the existing collective bargaining agreement. As such, the outcome of this litigation will not impose obligations upon Unisys that are inconsistent with the obligations of Local 444 and its collective bargaining agreement. Accordingly, Unisys' motion to join Local 444 as a necessary party is denied.

### C. *Unisys' Motion to Disqualify Counsel*

■ The disqualification of a party's counsel raises concerns with respect to a party's valued right to choose its own counsel. *S & S Hotel Ventures v. 777 S.H. Corp.*, 69 N.Y.2d 437, 440, 515 N.Y.S.2d 735, 736, 508 N.E.2d 647 (1987). In this Circuit, "[m]otions to disqualify opposing counsel ... are viewed with disfavor ... [because] disqualification of counsel impinges on parties' rights to employ the attorney of their choice." *Sommer v. Aronow*, 95 CIV 9230(BSJ), 1998 WL 85748, * 1 (S.D.N.Y. Feb. 26, 1998). As a result, courts are to be wary of disqualification motion interposed for tactical purposes, *Lamborn v. Dittmer*, 873 F.2d 522, 531 (2d Cir.1989), and the party moving to disqualify an attorney must meet a high standard of proof. *Government of India v. Cook Indust., Inc.*, 569 F.2d 737, 739 (2d Cir.1978).

■ However, the disqualification of an attorney is within the Court's discretion, *Kubin v. Miller*, 801 F.Supp. 1101, 1113 (S.D.N.Y.1992), and any doubt with regard to disqualification is to be resolved in favor of disqualification. *Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d Cir.1975); *see also Felix v. Balkin*, 49 F.Supp.2d 260, 267 (S.D.N.Y. 1999); *Moss v. Moss Tubes, Inc.*, 96 CV 1407, 1998 WL 641362, *5 (N.D.N.Y. Sept. 9, 1998).

DR 5–105 of the Code of Professional Responsibility states, in relevant part, that:

(A) A lawyer shall decline proffered employment if the exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, or if it would be likely to involve the lawyer in representing differing interest, except to the extent permitted under DR 5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing differing interests, except to the extent permitted under DR 5–105(C).

22 N.Y.C.R.R. § 1200.24(a), (b).

DR 5–105(C) states that:

In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients **if it is obvious that the lawyer can adequately represent the interest of each** and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent, professional judgment on behalf of each.

*Id.* (emphasis added).

■■■ While the Court agrees with Judge Weinstein's statement in *County of Suffolk v. Long Island Lighting Co.,* 710 F.Supp. 1407, 1412 (E.D.N.Y.1989), *aff'd,* 907 F.2d 1295 (2d Cir.1990), where he concluded that the Vladeck firm "is of excellent quality, well able, by professional capacity and economic power, to protect the rights of the class," the Court has serious concerns regarding the obvious conflict that has arisen due to this Court's decision permitting Unisys to implead Local 444 as a third-party defendant. It is well-settled that unions have a duty to fairly represent their members and "to serve the interests of all its members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).

It is not disputed that the Vladeck firm actively represented Local 444 during the negotiation of the CBA. Moreover, the Vladeck firm represented Local 444 in connection with the alleged negotiation and administration of the PP & E. In fact, the Vladeck firm represents Local 444 to this day. Therefore, it is abundantly clear to this Court that the Vladeck firm cannot represent the interests of the putative plaintiffs as their claims may ultimately be adverse to Local 444, due to the fact that the Vladeck firm represented and continues to represent Local 444. The Vladeck firm cannot adequately represent the interests of both Local 444 and the putative plaintiffs. In fact, the crux of the plaintiffs' argument against disqualification is that the contribution claims against Local 444 lack merit. In order to protect the rights of the plaintiffs, whose interests may conflict with those of Local 444, disqualification is necessary, regardless of whether the parties' consent to their representation. Accordingly, Unisys' motion to disqualify the firm of Vladeck, Waldman, Elias & Engelhard, P.C. as plaintiffs' counsel is granted.

D. *Plaintiffs' Motion for Class Certification*

As the Court has disqualified the putative plaintiffs counsel, the Court deems the motion for class certification withdrawn, without prejudice, and with leave to renew when new counsel is obtained.

Therefore, for the reasons set forth in this opinion, it is hereby

ORDERED, that Unisys' motion pursuant to Fed.R.Civ.P. 14 seeking leave to file a third-party complaint against Engineers Union Local 444 is **GRANTED** to the extent it seeks contribution under the NYHRL; and it is further

ORDERED, that Unisys' motion pursuant to Fed.R.Civ.P. 19 to join Local 444 as a necessary party is **DENIED;** and it is further

ORDERED, that Unisys' motion to disqualify the law firm of Vladeck, Waldman, Elias & Engelhard, P.C. as plaintiffs' counsel is **GRANTED;** and it is further

ORDERED, that all proceedings are stayed for a period of forty-five (45) days to permit the plaintiffs to retain new counsel; and it is further

ORDERED, that all counsel are to appear before Magistrate Judge Viktor V. Pohorlesky on October 22, 1999 at 2:00 PM with regard to further discovery in light of the third-party complaint; and it is further

ORDERED, that the plaintiffs' motion for class certification is deemed withdrawn, without prejudice, and with leave to renew; and it is further

ORDERED, that the caption is amended to read as follows:

United States District Court
Eastern District of New York

Andrew J. RODOLICO, on behalf of himself and all others similarly situated, Howard K. Benjamin, on behalf of himself and all others similarly situated, Robert G. Bozzone, on behalf of himself and all others similarly situated, Marvin Stall, on behalf of himself and all others similarly situated, Melvyn Rubenstein, on behalf of himself and all others similarly situated, Robert E. Wechsler, on behalf of himself and all others similarly situated, Plaintiffs,

v.

UNISYS CORPORATION, Defendant.

Unisys Corporation, Third–Party Plaintiff,

v.

Engineers Union, Local 444, Third–Party Defendant.

SO ORDERED.