COMMUNITY HEALTH CARE ASSOCIATION OF NEW YORK, Peekskill Area Health Center, Lutheran Medical Center, William F. Ryan Community Health Center, Syracuse Community Health Center, Bedford Stuyvesant Family Health Center, Joseph P. Addabbo Family Health Center, Centercare, Westchester Prepaid Health Services Plan, and Health Plus, Plaintiffs,

v.

Kevin P. MAHON, in his official capacity as Commissioner, Westchester County Department of Social Services, Third–Party Plaintiff,

v.

Antonia C. Novello, M.D., as Commissioner, New York State Department of Health, Third–Party Defendant.

No. 98 Civ 4539(BDP).

United States District Court, S.D. New York.

July 25, 2000.

John E. Linville, Kalkines Arky Zall & Bernstein LLP, New York City, for plaintiffs.

Samuel S. Chin, A.A.G., New York State Attorney General's Office, New York City, for defendant New York State.

Irma Cosgrif, Westchester County Attorney's Office, White Plains, NY, Sean T. Granahan, Epstein Becker & Green P.C., New York City, for defendant Westchester County.

## MEMORANDUM DECISION AND ORDER

BARRINGTON D. PARKER, Jr., District Judge.

Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983, and the Administrative Procedure Act, 5 U.S.C. § 500, *et seq.*, seeking a declaratory judgment that local, state and federal officials violated the cost reimbursement provision of the federal Medicaid program. *See* 42 U.S.C. § 1396(b)(m)(2), *et seq.* This Court, *inter alia*, previously dismissed this action against Barbara DeBuono, former Commissioner of the New York State Department of Health sued in her official capacity, on Eleventh Amendment grounds. Subsequently, the remaining defendant, Kevin P. Mahon, Commissioner of Westchester County's Department of Social Services (the "County") filed a third-party complaint against the state defendant. Before this Court is the state defendant's motion to dismiss Mahon's third-party complaint, again on Eleventh Amendment grounds. In addition, the County moves to dismiss the entire lawsuit without prejudice on grounds that the state defendant is an indispensable party. *See* Fed.R.Civ.P. 19(b). Lastly, plaintiffs move for partial summary judgment pursuant to Fed. R.Civ.P. 56.

For the reasons stated below, the state's motion to dismiss the third-party complaint is granted, the County's Rule 19 motion is denied and plaintiffs' motion for partial summary judgment is granted.

## FACTUAL & PROCEDURAL BACKGROUND[1]

### I. 42 U.S.C § 1396b(m)(2)(A)(ix)—Reasonable Cost Reimbursement.

Plaintiffs are six New York state outpatient medical facilities designated by the federal government as federally qualified health centers ("FQHCs"); three New York State Medicaid managed care plans affiliated with FQHCs and licensed as Prepaid Health Services Plans ("PHSPs") to serve Medicaid recipients and beneficiaries of other government health insurance pro-

---

**1.** For a full account of the factual background of this case, *see Community Health Care Ass'n* *of New York v. DeParle,* 69 F.Supp.2d 463 (S.D.N.Y.1999).

grams, and an association of FQHCs in New York state.[2] The original defendants included Barbara DeBuono, sued in her official capacity as Commissioner of the New York State Department of Health (the "State"), and the County. By Memorandum Decision and Order dated September 27, 1999, this Court, *inter alia*, dismissed this action against the State based upon Eleventh Amendment immunity.[3]

This case concerns a provision of the Medicaid law that was in effect from 1990 until October 1, 1997. Since 1989 Congress has required state Medicaid programs to pay FQHCs a fee-for-service medicaid rate which covers 100% of their "reasonable costs" for treating Medicaid recipients. In 1990, Congress extended the mandate to state Medicaid managed care programs under 42 U.S.C. § 1396b(m)(2)(A)(ix), the provision of federal Medicaid law at issue here.[4] Under this law, in order for the federal government to pay its share of Medicaid expenses, plaintiffs allege states were required to include in their contracts with managed care plans provisions allowing the plans to elect reasonable cost reimbursement to FQHCs and requiring the states to reimburse the plans for the extra costs of paying reasonable cost reimbursement. The FQHC reasonable cost reimbursement provisions were amended by

the Balanced Budget Act of 1997. *See* Balanced Budget Act of 1997 § 4712(b), Pub.L. 105–33. Under the Balanced Budget Act, states are now required to pay reasonable cost reimbursement directly to FQHCs who render services to Medicaid managed care patients, as opposed to reimbursing the plans themselves. *See* 42 U.S.C. §§ 1396a(A)(13)(C)(i) and 1396b(m)(2)(A)(ix). Plaintiffs do not allege that the County defendant violated the new reasonable cost provision.

Effective January 1, 1996, the Westchester County Department of Social Services ("WCDSS") operated a mandatory Medicaid managed care program, pursuant to a waiver from the federal Health Care Financing Administration ("HCFA"). In May of 1994, WCDSS issued its own proposal for developing the Medicaid Managed Care Program, and made modifications to the State's managed care model. In April of 1995, the County issued a request for proposal ("RFP") to managed care health plans regarding contracts to provide medical services under the Westchester County Managed Care Plan. The RFP included a provision which did not guarantee a reasonable cost-based reimbursement of services provided by FQHCs. On May 18, 1995, HCFA's regional administrator upheld the provision and ruled that Westchester County had

---

**2.** Each of the PHSP plaintiffs is owned and operated by one or more FQHCs, including some of the plaintiff FQHCs, and one of the FQHC plaintiffs is also licensed as a PHSP.

**3.** The other defendants were Donna Shalala ("Shalala"), Secretary of the United States Department of Health and Human Services ("HHS") and Nancy–Ann Min DeParle ("DeParle"), the Administrator of the Health Care Financing Administration ("HCFA"). This Court dismissed plaintiffs' claims against DeParle and Shalala because they did not present a live case or controversy and thus were moot, and dismissed plaintiffs' claims against the County under the Administrative Procedures Act, pursuant to Fed.R.Civ.P. 12(b)(6).

**4.** This provision provides in relevant part:
(2)(A) ... no payment shall be made under this subchapter to a State with respect to

expenditures incurred by it for payment ... for services provided by any entity ... which is responsible for the provision ... of inpatient hospital services and any other service described in paragraph (2), (3), (4), (5), or (7) of section 1396d(a) of this title ... unless—
....
(ix) such contract provides, in the case of an entity that has entered into a contract for the provision of services with a Federally-qualified health center or a rural health clinic, that the entity shall provide payment that is not less than the level and amount of payment which the entity would make for the services if the services were furnished by a provider which is not a Federally-qualified health center or a rural health clinic;

not violated federal law. Westchester County's subsequent contracts with Medicaid managed care plans, including plaintiffs, did not include a reasonable cost reimbursement election provision. Instead the contracts stated:

There will be no guaranteed cost-based reimbursement of services provided by FQHCs or look-alikes for individuals enrolled in a PHSP which contracts on an at risk basis for the services provided to managed care enrollees.

Affidavit of Georganne Chapin, Exh. 7.

On October 22, 1999 plaintiffs served an amended complaint and stipulated to withdraw this action against the State without prejudice to any appeal or any other rights of plaintiffs with respect to this Court's September 27, 1999 Decision and Order. Specifically, plaintiffs allege in their amended complaint that in a managed care Medicaid contract between the County and plaintiff Westchester Prepaid Health Services Plan, Inc. ("HealthSource"),[5] the County did not include the medicaid provision which permitted plaintiff Peekskill Area Health Center ("Peekskill") and other FQHCs to elect the reasonable cost reimbursement compensation methodology. In an affidavit in support of plaintiffs' motion for summary judgment, Georganne Chapin ("Chapin"), President and Chief Executive Officer of HealthSource, states that from 1988 to the present, HealthSource paid enhanced rates to Peekskill and other FQHCs which were higher than the rates HealthSource paid to comparable providers but were not high enough to guarantee full reasonable cost reimbursement to the FQHCs. Plaintiffs assert, ... HealthSource was not reimbursed by the State or Westchester County for the additional costs related to reimbursing the FQHCs with which it contracted at those higher rates. Moreover, HealthSource was never given the opportunity in its contracts with Westches-

ter County to have the FQHCs with which HealthSource contracted elect reasonable cost reimbursement.

Chapin Aff. ¶ 2.

On November 22, 1999, the County served a third-party complaint against Antonia C. Novello, the recently-appointed Commissioner of the New York State Department of health (also the "State"), seeking indemnification in the event of a monetary judgment against the County. On December 9, 1999, the State moved to dismiss Westchester County's third-party complaint, again on Eleventh Amendment grounds. At a conference held on March 17, 2000, this Court advised the parties that the State's motion to dismiss the third-party complaint would be decided together with the County's Rule 19 Motion. On November 29, 1999, plaintiffs' moved for partial summary judgment pursuant to Fed.R.Civ.P. 56.

### DISCUSSION

I. State's Motion to Dismiss Third–Party Complaint.

In deciding a 12(b)(6) motion, the Court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmovant's favor. *See Thomas v. City of New York,* 143 F.3d 31, 37 (2d Cir.1998). Likewise, in considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "the Court must accept as true all material factual allegations in the Complaint and refrain from drawing inferences in favor of the party contesting jurisdiction." *Serrano v. 900 5th Avenue Corp.,* 4 F.Supp.2d 315, 316 (S.D.N.Y.1998).

In its third-party complaint, the County alleges that it had "no discretion, authority or ability to administer the State's Medicaid Program except as the agent of the State and in strict compliance with the State's directives." Third–Party Com-

---

**5.** HealthSource was organized by plaintiff Peekskill and other Westchester County FQHCs.

plaint ¶ 7. The County further alleges that all contracts and compensation arrangements with the plaintiff health plans were issued by the County upon terms and conditions imposed by the State. Thus, the County alleges that any failures to conform to applicable federal reimbursement requirements which Congress amended in 1997, were caused solely and exclusively by state mandates and that the state must therefor indemnify the County for any money damages it might be required to pay the plaintiffs.

### A. Eleventh Amendment Immunity

 The County's third-party complaint must be dismissed because the Eleventh Amendment bars such a suit in a federal court. The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

A state that has not consented to being sued is immune from suits brought in federal courts by its own citizens as well as by citizens of another state. *See Kimel v. Florida Board of Regents*, — U.S. —, —, 120 S.Ct. 631, 640, 145 L.Ed.2d 522 (2000) ("[F]or over a century now, we have made clear that the Constitution does not provide for federal jurisdiction over suits against nonconsenting States."); *Alden v. Maine*, 527 U.S. 706, 119 S.Ct. 2240, 2246, 144 L.Ed.2d 636 (1999) (discussing origins of states' Eleventh Amendment immunity); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). In order to be sued in federal court, a state must expressly and, in no uncertain terms, waive its Eleventh Amendment immunity. *Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 305, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) ("The Court will give effect to a State's waiver of Eleventh Amendment immunity only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.") (internal quotations omitted). In the absence of consent, a suit for monetary damages in which the State, or one of its agencies or departments, is named as the defendant is proscribed by the Eleventh Amendment.

The State's Eleventh Amendment immunity extends as well to the County's third-party complaint seeking indemnification or contribution from the State. *See Oneida County, N.Y. v. Oneida Indian Nation of New York State*, 470 U.S. 226, 105 S.Ct. 1245, 1260–61, 84 L.Ed.2d 169, *reh'g denied*, 471 U.S. 1062, 105 S.Ct. 2173, 85 L.Ed.2d 491 (1985). In *Oneida County*, the Supreme Court disposed of a similar attempt to circumvent a state's Eleventh Amendment immunity, stating:

> The counties' cross-claim for indemnification raises a classic example of ancillary jurisdiction. *See Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978). The Eleventh Amendment forecloses, however, the application of normal principles of ancillary and pendent jurisdiction where claims are pressed against the State.... As we held in *Pennhurst*: "[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Id.* at 121, 104 S.Ct. at 919. The indemnification claim here, whether cast as a question of New York law or federal common law, is a claim against the State for retroactive monetary relief. In the absence of the State's consent ... the suit is barred by the Eleventh Amendment. Thus, ... whether the State has consented to waive its constitutional immunity is the critical factor in whether the federal courts properly ex-

ercised ancillary jurisdiction over the counties' claim for indemnification. 470 U.S. at 251, 105 S.Ct. 1245; *see also In re Secretary of the Dep't of Crime Control & Pub. Safety,* 7 F.3d 1140, 1145 (4th Cir.1993) (indemnity claim against state was "a claim against the State itself for purposes of the Eleventh Amendment, as it is directed to the Secretary in his official capacity and asks him to pay out funds from the State treasury as retroactive relief for a past wrong" and thus, is barred); *Mullin v. P & R Educational Services, Inc.,* 942 F.Supp. 110, 114–15 (E.D.N.Y. 1996) (denying defendant's cross-claim against the state for indemnification in § 1983 action). The Court in *Oneida County* also went on to hold that the counties' indemnity claim raised a question of State law. 470 U.S. at 252, 105 S.Ct. 1245.

Here, the County's third-party complaint asserts claims for indemnification and contribution. These claims arise under New York law. *See Mullin,* 942 F.Supp. at 114–15. As this Court held in its September 27, 1999 Decision and Order, *see Community Health,* 69 F.Supp.2d at 473, the State has not waived its Eleventh Amendment immunity and has not consented to suit in federal court, nor is there any evidence in the record before this Court to suggest such a waiver. Accordingly, the County's third-party complaint against the State for indemnification is dismissed.

### B. The County's Rule 19 Motion

Next, the County moves for dismissal under Rules 19 and 12(b)(7) of the Federal Rules of Civil Procedure. It argues that if its third-party complaint against the State is not allowed, as has occurred here, then the entire action must be dismissed without prejudice so that the State, which the County asserts is an indispensable party, can be joined in the action in another forum.

Federal Rule of Civil Procedure 19 sets forth a two step analysis. First, this Court must determine whether a party should be joined as a "necessary party" under Rule 19(a), which provides:

(a) ... A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Second, if this Court determines that joinder of a party who meets the description of Rule 19(a) is not feasible, we then must consider the factors set forth in Rule 19(b) which permits dismissal of the action where the court finds that the absent party is "indispensable." [6] *See ConnTech Dev. Co. v. University of Connecticut Educ. Properties, Inc.,* 102 F.3d 677, 681–82 (2d Cir.1996); *Ente Nazionale Idrocarburi v. Prudential Securities Group, Inc.,*

---

6. Rule 19(b) provides:

(b) ... If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

744 F.Supp. 450, 456 (S.D.N.Y.1990). "Whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation." *Provident Tradesmens Bank and Trust Co. v. Patterson,* 390 U.S. 102, 118, 88 S.Ct. 733, 742, 19 L.Ed.2d 936 (1968); *see also Ente Nazionale,* 744 F.Supp. at 456 (indispensability is to be determined on a pragmatic, case-by-case basis).

■ In the context of this particular litigation, this Court finds that the State is not an indispensable party within the meaning of Rule 19(a), making it unnecessary to apply Rule 19(b). First, "complete relief" among those already parties can be awarded in this case without joining New York as a party.

Plaintiffs seek a declaratory judgment that the County violated federal law and demand full damages against the County for that violation. It is within this Court's power to award complete relief in these circumstances and, as discussed further below, this Court finds that the County violated the Medicaid provision at issue. "[T]he term complete relief refers only to relief as between the persons already parties, and not as between a party and the absent person whose joinder is sought." *Arkwright–Boston Mfrs. Mut. Ins. Co. v. City of New York,* 762 F.2d 205, 209 (2d Cir.1985) (internal quotations omitted). The granting of the relief sought by plaintiffs requires nothing of the State and imposes no new obligations on the State. *See ConnTech Dev. Co.,* 102 F.3d at 682 (state of Connecticut was not indispensable party in arbitration because it was "not required to do anything under the arbitration award, and thus its absence could in no way preclude complete relief from being granted."); *Peregrine Myanmar Ltd. v. Segal,* 89 F.3d 41, 48 (2d Cir.1996) ("Complete relief can be accorded even without the [absent party], because nothing in the district court's statements or final judgment requires the [absent party]

to do anything or change any of its positions").

Furthermore, Rule 19 does not mandate that all claims relating to an action be resolved in one proceeding. *See M.C. v. Voluntown Bd. of Educ.,* 178 F.R.D. 367, 369 (D.Conn.1998) ("Rule 19(a)(1) does not require joinder for the universal resolution of all related claims."). In *M.C. v. Voluntown Board of Education,* for example, a special education student sued the local board of education asserting claims under the Individuals with Disabilities Education Act ("IDEA") challenging the student's special education program. 178 F.R.D. at 369. The local board made a Rule 19 motion to join the Connecticut State Board of Education as an indispensable party. *Id.* The Court denied the motion, noting that the local board could seek full or partial reimbursement from the State Board for any tuition or tutoring costs it might be required to pay. The court wrote, "[t]his does not mean, however, that the reimbursement issue must be resolved in the present litigation." *Id.* at 370.

Likewise, plaintiffs here have prevailed against the County, requiring the County to pay damages. Once damages are calculated and the judgment is satisfied, the County is free to pursue an appropriate indemnification action against the State in state court. The risk that the County might not be successful in such an action does not require joinder of the State here. *See M.C. v. Voluntown,* 178 F.R.D. at 369.

There is no potential violation of Rule 19(a)(2)(i). Given the contractual relationship between plaintiffs and the County, the State's interest in this litigation is separate from that of the County and it is thus not an indispensable party to this action. *See ConnTech Dev. Co.,* 102 F.3d at 682 ("A nonparty to a . . . contract ordinarily is not a necessary party to an adjudication under the contract.") (internal quotations omitted). The contract between plaintiff Prepaid Health Services Plan states "This agreement is made by and between County of Westchester, acting by and through

the Westchester County Department of Social Services." Chapin Aff.Exh. 7 at 1. As stated earlier, Plaintiffs allege that from 1990 through October 1, 1997, the period during which reasonable cost reimbursement was in effect, Westchester County and other local social service districts never put required reimbursement provisions in their contracts with Medicaid managed care plans, including plaintiffs.[7] Thus, the subject of this action is plaintiffs' rights under its contracts with the County. The State, which claims no interest relating to that subject, is not an indispensable party. *See ConnTech*, 102 F.3d at 682 ("[B]ecause it does not claim an interest relating to the subject of the action, Connecticut is not required to be joined under either prong of Rule 19(a)(2)"); *Peregrine*, 89 F.3d at 49 ("It is the absent party that must claim an interest.") (internal quotations omitted). The State's potential interests in the outcome of this lawsuit are separate and distinct from those of the County and do not require resolution in this forum. *See ConnTech*, 102 F.3d at 682.

The absence of the State does not expose Westchester to a substantial risk of incurring inconsistent obligations. *See* Fed.R.Civ.P. 19(a)(2)(ii). The County may pursue a separate claim for indemnity against the State. Whatever the outcome of such an indemnity action, the County will not face inconsistent obligations to the plaintiff. *See Evergreen Marine Corp. v. Welgrow Internat'l, Inc.*, 942 F.Supp. 201, 206 (S.D.N.Y.1996). *Evergreen* involved a dispute over a service contract in which the plaintiff sued its supplier's consignee in a Belgian court to recover detention charges and brought a similar action against the supplier in the Southern District of New York. In that action, the supplier sought to join the consignee as an indispensable party. In finding that the consignee was not indispensable, the district court in *Evergreen* explained:

> [T]here is no risk of multiple liability or "inconsistent obligations." If this litigation proceeds concurrently with the litigation in Antwerp, there is a possibility that the two tribunals could come to opposite conclusions concerning [defendant's] liability for the disputed detention charges. However, Rule 19 does not protect a party from logically inconsistent results, only inconsistent obligations. *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D.Ohio 1984). Here, an inconsistency in holdings will not impose multiple damage awards or inconsistent equitable obligations, such as would result from the issuance of conflicting injunctions. Two different results regarding liability will result in only one obligation, an obligation to pay damages, and there will be no other obligation with which that obligation will conflict.

942 F.Supp. at 206.

## II. Motion for Summary Judgment

Plaintiffs move for summary judgment pursuant to Fed.R.Civ.P. 56(a). Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). On a motion for summary judgment, "[a]s a general rule, all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir.1988) (citing *Celotex Corp. v. Catrett*, 477 U.S.

---

**7.** Specifically, plaintiffs allege that the County violated the law by not including two provisions in its contracts with managed care plans: (1) that the plans offer FQHCs the right to elect to receive reasonable cost reimbursement for treating managed care enrollees; and (2) that the State would pay the extra costs the plans incur from paying reasonable cost reimbursement to FQHCs. *See* 42 U.S.C. § 1396b(m)(2)(A)(ix).

317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986)).

The Federal Rules of Civil Procedure mandate the entry of summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial". *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Although in reviewing the record, this Court must assess the evidence "in the light most favorable to the non-movant and ... draw all reasonable inferences in [his] favor," *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir.1990), the mere existence of an alleged factual dispute between the parties will not defeat a motion for summary judgment. *Terry v. United States*, No. 98 Civ. 8249(NRB), 2000 WL 204522, at *3 (S.D.N.Y. Feb.18, 2000). Rather, the non-moving party must affirmatively set forth facts showing that there is a genuine issue for trial. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A dispute about a material fact is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

The County opposes plaintiffs' motion for summary judgment on several grounds and requests that this Court deny the motion pursuant to Fed.R.Civ.P. 56(f). The County alleges that plaintiffs Peekskill and HealthSource lack standing to bring this lawsuit against WCDSS and that plaintiffs' claims are time-barred. In addition, the County requests further discovery to develop facts in support of several arguments it makes in opposition to summary judgment: (1) that Peekskill and HealthSource have failed to allege and cannot establish the existence of a justiciable controversy; (2) WCDSS has not violated the Social Security Act; and (3) plaintiffs have failed to allege and cannot establish the existence

of a County policy or custom that caused violation of their federal statutory rights. Some of defendant's arguments do not require detailed discussion and will be addressed only briefly.

### A. Standing

Plaintiffs Peekskill and Health Source have standing to bring this action. The requirement of standing is derived from Article III's limitation on judicial power to actual cases or controversies. *See Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 471, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982); *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 37, 96 S.Ct. 1917, 1924, 48 L.Ed.2d 450 (1976). "[T]he standing question in its Art. III aspect 'is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf.'" *Simon*, 426 U.S. at 38, 96 S.Ct. at 1924 (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)); *see also Lee v. Bd. of Governors of Federal Reserve Sys.*, 118 F.3d 905, 910 (2d Cir.1997) ("'a litigant's stake in the controversy must extend beyond mere interest in a dispute, and ... standing ... ensure[s] the presence of that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends") (internal quotations omitted). The party invoking the authority of the court bears the burden of proof on the standing issue. *Id.*

To establish standing, plaintiffs must satisfy three conditions: First, plaintiffs must show they have suffered an "injury in fact"—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Lee*, 118 F.3d at 910; *In re Appointment of Indep. Counsel*, 766 F.2d 70, 73 (2d Cir. 1985) ("a plaintiff must establish first that he has suffered some 'distinct and palpable

injury' ") (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979)). Second, there must be a causal connection between the injury and the conduct complained of, i.e., the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Lee,* 118 F.3d at 910; *Indep. Counsel,* 766 F.2d at 73. Finally, plaintiffs must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

■ Plaintiffs Peekskill and Health-source satisfy the above requirements. First, they have suffered an injury-in-fact in that, as noted earlier, the managed care Medicaid contract between the County and HealthSource did not include the medicaid provision which permitted plaintiff Peekskill and other FQHCs, to elect the reasonable cost reimbursement compensation methodology. From 1988 to the present, HealthSource paid enhanced rates to Peekskill and other FQHCs which were higher than the rates HealthSource paid to comparable providers but were not high enough to guarantee full reasonable cost reimbursement to the FQHCs, and it has never been reimbursed. Clearly there is a causal connection between defendant's behavior and plaintiffs' injury. And finally, a decision in plaintiffs' favor requiring the County to pay damages to plaintiffs will redress the injury complained of.

### B. Statute of Limitations

For the reasons stated in this Court's September 27, 1999 Decision and Order, we find that plaintiffs' claims are not time-barred. *See Community Health,* 69 F.Supp.2d at 476.

### C. Rule 56(f)

Rule 56(f) provides in relevant part:

(f) .... Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed.R.Civ.P. 56(f). "[A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.' " *Gurary v. Winehouse,* 190 F.3d 37, 43 (2d Cir.1999) (quoting *Meloff v. New York Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995)); *see also Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137–38 (2d Cir.1994); *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy,* 891 F.2d 414, 422 (2d Cir.1989); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir. 1985).

In support of its Rule 56(f) motion, the County submits the affidavits of Irma W. Cosgriff, Senior Assistant County Attorney in the office of the Westchester County Attorney ("Cosgriff Affidavit") with accompanying exhibits. The Cosgriff Affidavit asserts that further discovery is needed to determine "whether the capitation payments which HealthSource agreed to receive under the WCDSS contract were less than the reasonable costs associated with operating this program." Cosgriff Aff. ¶ 24.

HealthSource and the County agreed on fixed capitation rates, i.e., a fixed monthly amount that it would receive for a Medicaid enrollee to provide that enrollee with Medicaid's covered benefit package. The County seeks discovery to determine whether the monies paid by HealthSource to Peekskill were less than "what would

have been generated by a properly submitted application by Peekskill to the State for reasonable cost-based reimbursement." Consgriff Aff. ¶ 24. Cosgriff avers that discovery on these issues would include examination of cost reports, internal financial documents, interim and final audits, state and federal audits, reimbursement records, and other documentation. The County requests that it be permitted to conduct depositions of officials from plaintiffs' organizations as well as from state and federal agency officials. It also seeks discovery to determine "whether Peekskill ever submitted a properly supported application to the State for reasonable cost based reimbursement and if so, whether that application was denied, and if denied, the reasons for the denial." Cosgriff Aff. ¶ 29.

■ The County has not demonstrated how obtaining such information would be sufficient to defeat plaintiffs' motion for summary judgment. This Court may deny a request under Rule 56(f) where discovery will not likely produce information that gives rise to a genuine issue as to any material fact. *See First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 298, 88 S.Ct. 1575, 1597, 20 L.Ed.2d 569 (1968); *Hudson River Sloop Clearwater*, 891 F.2d at 422; *see also Colan v. Prudential–Bache Securities, Inc.*, 577 F.Supp. 1074, 1084 (N.D.Ill.1983) (Rule 56(f) motion may be denied "when the record demonstrates that the requested discovery is not likely to produce the facts necessary to defeat" summary judgment). The information sought by the County goes not to the question of the County's liability, the issue presently before the Court, but rather to the amount of damages to which the

plaintiffs may be entitled. The County's request for discovery is based on the mere speculation that reimbursement under the capitation rates was enough to sustain reasonable cost reimbursement from the PHSP to the FQHC. They do not dispute, however, that the contracts did not contain the provisions required under federal law allowing for a reasonable cost reimbursement election. Given the fact that plaintiffs filed this lawsuit because they were unable to elect reasonable cost reimbursement and to receive such reimbursement, it is highly unlikely that the capitation rate was enough.

Furthermore, the County has not explained why it was unable to obtain the documentation outlined in the Cosgriff Affidavit and has not described any effort to do so. The information the County seeks easily could be obtained from its own files and from New York State, which has cost reports from Peekskill and other FQHCs in New York. Cost based fee-for-service Medicaid rates of FQHCs are a matter of public record. Westchester knows the amount of the capitation payment set in its contract and it and the state regularly collect activity data from the PHSPs. There is a host of relevant information available to the County in its own files and that of the State, which it could have obtained without discovery.

Tellingly, however, the County makes no showing how any of the discovery claimed to be necessary can add a requirement of reasonable cost reimbursement to contracts required by federal law to contain one but which did not. Accordingly, this Court will not delay deciding the summary judgment motion to allow for further discovery pursuant to Rule 56(f).[8]

---

**8.** On July 10, 2000, defendant Mahon attempted again to move to dismiss the instant action pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), arguing that this Court lacks subject matter jurisdiction and that plaintiffs fail to state a § 1983 claim or, in the alternative, that this Court should abstain from deciding this matter under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943)

and *Bethphage Lutheran Service, Inc. v. Weicker*, 965 F.2d 1239 (2d Cir.1992). In a letter dated July 7, 2000, defendant stated that it was submitting the motion following "a review of all the pleadings and correspondence in this ... matter" in which "nothing new specific to such motion was uncovered." This latest motion to dismiss was filed more than 6 months after the summary judgment

**D. The County violated federal Medicaid law**

■ The County violated the Social Security Act, specifically 42 U.S.C. § 1396b(m)(2)(A)(ix) in a variety of ways. First, the contracts between Westchester County and the plans have never provided that an FQHC may elect to receive payment for its services to plan members based upon reasonable cost reimbursement and that the state or its local social service district, here Westchester County, must fully compensate the plan for those payments.

Second, the contracts between Westchester County and plaintiffs violated the law in that they provided that it was the plan, rather than the FQHC, that was to elect whether or not the FQHC received reasonable cost reimbursement.

Third, the contracts between the County and plaintiffs provided that reasonable cost reimbursement would not apply to FQHCs that operate a PHSP and that an FQHC that operates a Medicaid PHSP is deemed to have waived its right to receive reasonable cost reimbursement from a Medicaid managed care plan

Fourth, the contracts at issue were illegal in that they provided that the State would not reimburse plans for the additional expenditures related to paying full reasonable cost reimbursement to the FQHCs with which they contracted.

**CONCLUSION**

For the foregoing reasons, the County's motion to join the State as an indispensable party under Rule 19 is denied and the State's motion to dismiss the third-party complaint is granted. Plaintiff's motion for partial summary judgment is granted.

motion was submitted and two months after its Rule 19 motion was filed. Because this Court grants plaintiffs' motion for summary

judgment, it will not consider the County's second motion to dismiss, as it is now moot.