M.O.C.H.A. SOCIETY, INC.,
et al., Plaintiffs,

v.

CITY OF BUFFALO, et
al., Defendants.

No. 98–CV–99C.

United States District Court,
W.D. New York.

July 7, 2003.

Hiscock & Barclay, LLP (Thomas S. Gill, Esq., of Counsel), Buffalo, New York, for Plaintiffs.

Michael B. Risman, Corporation Counsel of the City of Buffalo (Matthew Van Vessem, Esq., Assistant Corporation Counsel, of Counsel), Hodgson Russ LLP (Kathleen M. Sellers, Esq., of Counsel), Buffalo, New York, for City of Buffalo Defendants.

Schwan, Sammarco & Sammarco (W. James Schwan, Esq., of Counsel), Buffalo, New York, for Defendants Buffalo Professional Firefighters Association, Inc., Local 282, and Ronald Cassel.

Eliot Spitzer, Attorney General of the State of New York, (Ann C. Williams, Esq., Assistant Corporation Counsel, of Counsel), Buffalo, New York, for State of New York.

## OPINION

CURTIN, District Judge.

Defendant City of Buffalo moves pursuant to Rule 14 of the Federal Rules of Civil Procedure for leave to implead the New York State Department of Civil Service and George C. Sinnott, Commissioner, as third-party defendants. Oral argument was heard by the court on June 13, 2003. For the reasons that follow, the City's motion is denied.

## BACKGROUND

As discussed at length in this court's prior decisions and orders in this case, plaintiffs Men of Color Helping All Society, Inc. ("M.O.C.H.A.") and several individual City of Buffalo firefighters brought this employment discrimination action pursuant to various sections of the Civil Rights Act of 1964, including 42 U.S.C. §§ 1981, 1983, and 2000e–2 and 2000e–5 (Title VII). The case involves two separate complaints: Complaint "A," alleging discriminatory enforcement of the Buffalo Fire Department's drug-testing policy (see Item 55), and Complaint "B," alleging discriminatory promotion practices (see Item 54). This motion relates to Complaint "B."

More specifically, in Complaint "B," plaintiffs allege discriminatory administration and scoring of the 1998 statewide examination utilized by the City to determine the promotion of firefighters to the rank of lieutenant, and that "[t]he test itself contains a racial bias which works to the disadvantage of African Americans" (Item 54, ¶ 33). In July 2001, the court granted the plaintiffs' motion for a temporary restraining order ("TRO") enjoining the City from making any promotions from the eligibility list generated by the 1998 lieutenant's exam pending a hearing on plaintiffs' application for a preliminary injunction (see Item 76). After a hearing on July 9, 2001, the court issued an order lifting the TRO and directing the parties to engage in expedited discovery, including "efforts to secure information from New York State regarding how the 1998 lieutenant's exam was developed" (Item 79). On July 20, 2001, upon receiving further

submissions and hearing argument, the court issued an opinion from the bench denying plaintiffs' preliminary injunction application (*see* Items 93, 96).

In the meantime, counsel for the City contacted the State of New York Attorney General's Office to request information from the State Department of Civil Service (the "Department") regarding the development of the 1998 lieutenant's exam, in accordance with the court's July 9, 2001 order. Assistant Attorney General Ann Williams responded that, while the Department was not a party to this litigation, it was willing to voluntarily provide the requested information. Then, on August 10, 2001, plaintiffs served the Department with a notice of deposition along with a non-party subpoena *duces tecum* seeking substantially the same information requested by the City. Thereafter, the court signed a stipulated confidentiality order covering the disclosure of the requested information (Item 107), and the Department provided the parties with documents responsive to the requests. On January 31 and February 1, 2003, the parties deposed Dr. Wendy Steinberg, a former employee of the Department who had primary responsibility for development of the lieutenant's exam at issue.

Subsequent to Dr. Steinberg's deposition, the City filed this motion pursuant to Fed.R.Civ.P. 14 for leave to bring the Department and George C. Sinnott, Commissioner of Civil Service, into the case as third-party defendants. In its proposed third-party complaint, the City reiterates the allegation that the lieutenant's exam contains a racial bias in violation of, "among other statutes, Title VII ..." (Item 138, Ex. A, ¶ 7), and that the Department developed, administered, and scored the March 1998 exam in accordance with its statutory duties under New York Civil Service Law § 23(2)[1] (*id.*, ¶¶ 8–10). The City further alleges:

> If the plaintiffs sustained any damages in any manner alleged in the Complaint, and the City should be held liable to the plaintiffs, then such damages will have been caused, in whole or in part, by the creation, administration, and scoring by the third-party defendants of the lower level fire promotion examination. Therefore, the third-party defendants would be liable, in whole or in part, to the City for damages, if any, recovered by the plaintiffs on the causes of action alleged in the complaint.

(*Id.* at ¶ 11.)

Plaintiffs do not oppose the City's motion. The Department, on the other hand, has filed a memorandum in opposition to the motion,[2] asserting the following grounds:

---

1. Section 23(2) provides:

 The state civil service department, upon the request of any ... municipal commission, shall render service relative to the announcement, review of applications, preparations, construction, and rating of examinations, and establishment and certification of eligible lists for positions in the classified service under the jurisdiction of such municipal commission. The department may charge a reasonable fee as a condition of rendering any such services. Only the state civil service department and commission shall have jurisdiction to correct any errors in rating in any examination prepared and rated by such department pursuant to the provisions of this subdivision.
 N.Y. Civ. Serv. Law § 23(2).

2. Upon receipt of the City's Rule 14 motion, the court issued an order setting a schedule for briefing and argument which specifically provided the Department the opportunity to respond (*see* Item 142). The City objected to the court's order (*see* Item 143), citing *Pantano v. Clark Equipment Co.*, 139 F.R.D. 40, 42 (S.D.N.Y.1991) (notice requirement of Rule 14 does not include notice to proposed third-party defendant). While recognizing this authority, and noting the City's objection, the court has dispensed with the formalities of Rule 14 (requiring responsive pleadings

1. The relief sought by the third-party complaint—*i.e.*, indemnification and/or contribution—is not available in a Title VII action.

2. The third-party complaint is barred by the Eleventh Amendment.

(*See* Item 147). Each of these grounds is discussed in turn below.

## DISCUSSION

### I. Impleader Under Rule 14

▮ Fed.R.Civ.P. 14(a) states, in pertinent part:

At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer. Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action.

The purpose of this rule is "to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim." *McLaughlin v. Biasucci*, 688 F.Supp. 965, 967 (S.D.N.Y.1988); *see also Rodolico v. Unisys Corp.*, 189 F.R.D. 245, 249 (E.D.N.Y.1999).

▮ While timely motions for leave to implead non-parties are, for the most part, "freely granted" in the interest of judicial economy, *Shafarman v. Ryder Truck Rental, Inc.*, 100 F.R.D. 454, 459 (S.D.N.Y. 1984), "the right to implead third parties is not automatic, and the decision whether to permit impleader rests within the sound discretion of the district court." *Consolidated Rail Corp. v. Metz*, 115 F.R.D. 216, 218 (S.D.N.Y.1987). Factors relevant to the court's determination of whether to grant leave to file a third-party complaint include: (1) whether the defendant deliberately delayed or was derelict in filing the motion; (2) whether impleading a new party would delay or unduly complicate the trial; (3) whether impleading would prejudice the third-party defendant; and (4) whether the proposed third-party complaint states a claim upon which relief can be granted. *Rodolico*, 189 F.R.D. at 249 (citing *Fashion–in–Prints, Inc. v. Salon, Marrow & Dyckman, L.L.P.*, 1999 WL 500149, at *6 (S.D.N.Y. July 15, 1999)).

In this case, the Department has addressed only the fourth factor—*i.e.*, the failure of the proposed third-party complaint to state a viable claim for relief.[3] The court now turns to a discussion of the Department's specific contentions.

### II. Title VII and Contribution/Indemnification

▮ As set forth above, the City's claim against the Department in this case is that if the City is found liable to the plaintiffs for damages due to discriminatory promotion practices resulting from the administration or scoring of the lieutenant's

---

and/or motion practice by impleaded third-party) given the Department's notice of the action by way of its voluntary participation in the discovery process, as outlined in the text.

**3.** There is a serious question with respect to the timeliness of the motion based on the

City's delay of five years in seeking to bring the State Department of Civil Service into the case. However, in the absence of any briefing or argument on this factor, and because the motion can be decided on substantive grounds in any event, the court will not address the issue of timeliness.

exam, then the Department should be found liable since those damages will have been caused, in whole or in part, by the creation of the exam. This is essentially a claim for contribution or indemnity, long recognized by the federal courts as unavailable in an action brought against an employer under Title VII.

■ *Northwest Airlines, Inc. v. Transport Workers,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981), provides the controlling authority for this proposition. In *Northwest Airlines,* female cabin attendants sued their employer for damages under Title VII and the Equal Pay Act based on collectively bargained wage differentials between male and female attendants. After a bench trial finding in the plaintiffs' favor, the employer brought a separate action for contribution against the union signatories to the collective bargaining agreements. In a unanimous decision, the Supreme Court held that there was no implied statutory or common law right of contribution available to an employer charged with violation of Title VII. *Id.* at 94–95, 101 S.Ct. 1571. The primary teaching of *Northwest Airlines* is that, in the absence of an express statutory provision or some indication of congressional intent to create a right of contribution in favor of employers, courts cannot entertain contribution claims in the face of Title VII's "comprehensive legislative scheme including an integrated system of procedures for enforcement." *Id.* at 97, 101 S.Ct. 1571; *see also United States v. Yonkers Board of Education,* 594 F.Supp. 466, 474 (S.D.N.Y. 1984).

The Second Circuit has extended the rationale of *Northwest Airlines* to actions for indemnification under Title VII, as well as to claims for contribution or indemnification under 42 U.S.C. § 1981. *See Anderson v. Local Union No. 3, Int'l Brotherhood of Electrical Workers,* 751

F.2d 546 (2d Cir.1984). As explained by the Second Circuit:

> The legislative scheme for Title VII enforcement would, indeed, be disrupted if defendants found liable under both Title VII and § 1981 were permitted to bring actions among themselves. In particular, the threat of § 1981–derived actions among persons conceivably liable under Title VII would discourage the voluntary settlement of employment discrimination claims. The courts have asserted, on numerous occasions, the importance of voluntary settlements in this area of the law, as such settlements work to speed the placement, in the workplace, of historically underrepresented groups. Congress, of course, expressed a strong preference for voluntary settlement in the enactment of Title VII.

*Id.* at 548–49 (citations omitted). Other cases following *Northwest Airlines*—including cases decided within the Second Circuit—have refused to recognize a right to contribution in actions brought under 42 U.S.C. § 1983. *See, e.g., Mason v. City of New York,* 949 F.Supp. 1068, 1079 (S.D.N.Y.1996) (allowing contribution among joint tortfeasors in § 1983 cases would conflict impermissibly with statute's goal of deterring unconstitutional conduct); *Koch v. Mirza,* 869 F.Supp. 1031, 1040–42 (W.D.N.Y.1994) (legislative history of § 1983 provides no basis for allowing indemnification or contribution claim against party with no personal involvement in the alleged constitutional violation); *see also Harris v. Angelina County,* 31 F.3d 331, 338 n. 9 (5th Cir.1994) (noting that most courts have found no right of contribution under § 1983).

On the basis of this authority, I find that the City has failed to state a third-party claim against the New York State Department of Civil Service for contribution or

indemnification arising out of plaintiffs' Title VII and § 1983 claims in this case.

### III. Eleventh Amendment Immunity

 The Department also contends that the proposed third-party complaint is barred in its entirety by the Eleventh Amendment, which provides that "[t]he Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This literal prohibition of suits against a State brought by citizens of another State extends as well to suits against a State brought by its own citizens. *See, e.g., Edelman v. Jordan,* 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Community Health Care Ass'n of New York v. Mahon,* 106 F.Supp.2d 523, 529 (S.D.N.Y.2000) (prohibition extends to suit brought on citizens' behalf by municipality against State agency).

 In order to be subject to suit in federal court, a state must expressly and unambiguously waive its Eleventh Amendment immunity, or Congress must clearly and unmistakably express its intention to abrogate the immunity in the language of the particular statute. *See Port Authority Trans–Hudson Corp. v. Feeney,* 495 U.S. 299, 304–05, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990). While it has long been recognized that the Eleventh Amendment bar is not applicable to suits for monetary damages for employment discrimination under Title VII of the Civil Rights Act, *see Fitzpatrick v. Bitzer,* 427 U.S. 445, 452, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Yoonessi v. State University of New York,* 862 F.Supp. 1005, 1013 (W.D.N.Y.1994), *leave to appeal denied,* 56 F.3d 10 (2d Cir.1995), the City's proposed third-party claim against the Department based on indemnification or contribution raises an independent question of state law as to which the State has not waived its constitutional immunity to suit in federal court. *See Oneida County, N.Y. v. Oneida Indian Nation of New York State,* 470 U.S. 226, 252, 105 S.Ct. 1245, 84 L.Ed.2d 169 (1985); *see also Community Health Care Ass'n,* 106 F.Supp.2d 523, 529; *Mullin v. P & R Educational Services, Inc.* 942 F.Supp. 110, 114–15 (E.D.N.Y.1996).

In *Oneida County,* Indian tribes sued two New York counties for damages representing the fair rental value of land presently owned and occupied by the counties based on allegations that the land was wrongfully conveyed to the State of New York under a 1795 agreement that violated the federal Nonintercourse Act. The counties subsequently filed third-party complaints against the State seeking indemnification of any damages assessed against them for their possession of the tribes' land. The Supreme Court ultimately dismissed the indemnification claim, finding it barred by the Eleventh Amendment. As stated by the Supreme Court:

> The counties' cross-claim for indemnification raises a classic example of ancillary jurisdiction. The Eleventh Amendment forecloses, however, the application of normal principles of ancillary and pendent jurisdiction where claims are pressed against the State.... As we held in *Pennhurst* [*State School and Hospital v. Halderman,* 465 U.S. 89, 121, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984)]: "[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment. A federal court must examine each claim in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." ... The indemnification claim here, whether cast as a question of New York law or federal common law, is a claim against the State for retroactive mone-

tary relief. In the absence of the State's consent, ... the suit is barred by the Eleventh Amendment.

*Oneida County,* 470 U.S. at 251, 105 S.Ct. 1245; *see also In re Secretary of the Dep't of Crime Control & Pub. Safety,* 7 F.3d 1140, 1145 (4th Cir.1993) (indemnity claim against Secretary is claim against State itself, barred by Eleventh Amendment immunity, since it seeks funds from State treasury as retroactive relief for past wrong), *cert. denied,* 511 U.S. 1109, 114 S.Ct. 2106, 128 L.Ed.2d 667 (1994).

At oral argument, the City maintained that even in the absence of a recognized right to contribution or indemnification under the federal anti-discrimination statutes, such a right exists under the New York Human Rights Law, alleged as a basis for relief in the plaintiffs' Complaint "B" (Item 54, ¶¶ 67–70). *See, e.g., Rodolico v. Unisys Corporation,* 189 F.R.D. 245, 250–52 (E.D.N.Y.1999). However, as recognized in the *Oneida County* decision, whether cast as a question of state or federal law, a claim for contribution or indemnification against the State is a claim for retroactive monetary relief, barred by the Eleventh Amendment in the absence of the State's consent. *Oneida County,* 470 U.S. at 251, 105 S.Ct. 1245; *see also Community Health Care Association of New York v. Mahon,* 106 F.Supp.2d 523, 528–29 (S.D.N.Y.2000) (dismissing Westchester County's third-party complaint against State for indemnification and contribution on health plans' claim that County failed to conform to applicable Medicaid reimbursement requirements).

Accordingly, since there is nothing in the record to suggest that the State has waived its Eleventh Amendment immunity, the City cannot maintain a third-party claim for contribution or indemnification against the Department of Civil Service.

*CONCLUSION*

For the foregoing reasons, the City of Buffalo's motion to implead the New York State Department of Civil Service and George C. Sinnott, Commissioner, as third-party defendants (Item 138) is denied.

So ordered.